80 So.2d 167 (1955)
William ARRINGTON, Plaintiff-Appellee-Appellant,
v.
HEARIN TANK LINES, Inc., et al., Defendant-Appellant.
No. 8295.
Court of Appeal of Louisiana, Second Circuit.
April 14, 1955.
*168 Dale, Richardson & Dale, Vidalia, plaintiff-appellee-appellant. Durrett & Hardin, Wallace A. Hunter, Baton Rouge, for Hearin Tank Lines, Inc.
Blanchard, Goldstein, Walker & O'Quin, Thomas A. Harrell, Shreveport, for Interstate Pipe Line Co.
*169 GLADNEY, Judge.
This suit was brought by William Arrington against Hearin Tank Lines, Inc., Interstate Pipeline Company, and Humble Oil and Refining Company, alleging defendants negligently permitted crude oil to escape, become ignited, and cause the destruction of an automobile and wearing apparel belonging to plaintiff. Proceedings against Humble Oil and Refining Company were agreeably dismissed when it disclosed it had no interest in the oil facilities involved. From a judgment in favor of plaintiff for $600 against Hearin Tank Lines, Inc. (hereinafter referred to as Hearin) and rejecting all demands against Interstate Oil Pipeline Company (hereinafter referred to as Interstate), Arrington and Hearin have appealed.
Declaring he does not know the exact cause of the leakage of the crude oil and the subsequent ignition, and that said information is known or should be known by the defendants, plaintiff invokes the doctrine of res ipsa loquitur. The petition alleges that the activities and operations of storing and removing the oil were conducted solely by the defendants and were exclusively under their control and supervision, and that in this instance, the operations were not conducted properly and defendants were guilty of actionable negligence in causing the resulting damage.
Interstate attacked the sufficiency of the petition through exceptions of vagueness and no cause or right of action. It was argued the pleading should have specifically set out the activities performed by its employees and should aver the manner in which the employees were guilty of negligence. Reliance is placed upon Fidelity Union Casualty Company v. Romero, 1929, 10 La.App. 796, 122 So. 288, and Loprestie v. Roy Motors, 1939, 191 La. 239, 185 So. 11, to the effect a general allegation of negligence is merely the pleader's own conclusion of law. The argument on both exceptions is directed to the same end and is answered by the ruling on a similar exception in Lykiardopoulo v. New Orleans & C. R. Light and Power Company, 127 La. 309, 312, 1910, 53 So. 575, 576, wherein the Supreme Court said:
"Ordinarily, where only the ultimate facts are alleged, and particulars are called for, the court should require the pleader to give the particulars intended to be relied upon; but cases readily suggest themselves which ought to be an exception to that rule * * *. In cases where the plaintiff cannot be expected to have any information as to the causes of the accident, whereas the defendant, on the contrary, must be assumed to be fully informed on the subject, and where the accident is of the kind which ordinarily do not occur when due care has been exercised, the rule of evidence is that the accident speaks for itselfres ipsa loquitur that is to say, that a presumption of negligence arises from the fact itself of the accident. In such cases, the plaintiff not only need not allege the particular acts of omission or commission from which the accident has resulted, but need not even prove them. The accident itself makes out a prima facie case, and the burden is on defendant to show absence of negligence."
This court recently had occasion to observe in Hamiter v. Duncan, 1955, 78 So.2d 80, 82:
"`Res ipsa loquitur' is not a rule of pleading or of substantive law, but is a rule of evidence, the applicability of which is to be determined at conclusion of trial.
"Specific pleading of doctrine of res ipsa loquitur is not required in cases where facts themselves invoke its application."
The decision in Fidelity Union Casualty Company v. Romero, supra, does not involve the doctrine of res ipsa loquitur, and hence is inapposite. The holding in Loprestie v. Roy Motors, is adverse to exceptor's contention as the Supreme Court therein rejects the argument so advanced as being contrary to the Lykiardopoulo decision *170 and other cited authorities. Our conclusion is that exceptor's position is untenable.
An additional contention is advanced by Interstate and by Hearin, who also filed an exception of no cause or right of action. The argument challenges plaintiff's failure to allege the exclusive management and control was in a single defendant and where there is such divided responsibility the doctrine of res ipsa loquitur is inapplicable. Cited in support of this doctrine are the cases of A. & J. Inc. v. Southern Cities Distributing Company, 1932, 173 La. 1051, 139 So. 477, 478, and Dorman v. T. Smith & Son, Inc., 1953, 223 La. 29, 64 So.2d 833, 838. The rule so stated by the court in the last mentioned case is:
"`The plaintiff, to some extent, relies upon the doctrine of res ipsa loquitur (the things speaks for itself). This is a rule of evidence peculiar to the law of a limited class of negligence cases; but where, as stated, the defendant has no control over the premises, or where there is a divided responsibility and the damage may have resulted from a cause over which the defendant had no control, all of the authorities hold, or at least the great weight of authority is, that the rule cannot be successfully invoked."
In each of the cases cited there was but one party defendant and the court rulings may be distinguished from the instant case for the reasons given in the above quotation from Dorman v. T. Smith & Son, Inc. We are not referred to any authority, nor do we know of any, which denies application of the doctrine of res ipsa loquitur where the operations producing the damage complained of were activities and operations conducted solely by several defendants. One can conceive of joint operations which could cast more than one defendant as a tort feasor. In Watkins v. Gulf Refining Company, 1944, 206 La. 942, 20 So.2d 273, 275, the Supreme Court declared:
"The defendant in a damage suit coming under the doctrine of res ipsa loquitur must show that he did not do anything that he should not have done, that he left undone nothing he should have done and that he neglected no legal duty owed to the plaintiff. Vargas v. Blue Seal Bottling Works, 12 La.App. 652, 126 So. 707; Horrell v. Gulf & Valley Cotton Oil Company, 15 La.App. 603, 131 So. 709."
In Beck v. United States Fidelity and Guaranty Company, La.App.1954, 76 So.2d 120, 121, 122, plaintiff sought to impose liability upon two defendants and invoked res ipsa loquitur. This court commented:
"It is interesting to note that both defendants concede plaintiff's right to recovery but each points an accusing finger at the other as being the party guilty of negligence. As a result we are here confronted not with the necessity of determining plaintiff's right to recovery but, rather, with a determination of liability on the part of one or both of defendants * * *."
The principle expressed in Dorman v. T. Smith & Son, Inc., and quoted above deals with instances where there is a divided responsibility and the damage may have resulted from a cause over which the defendant had no control. The presumption of negligence arising from the mere happening of the accident does not attach, therefore, to one who from reference to plaintiff's petition or the evidence adduced upon trial, is not shown to be in control of the operations which produced the injury. This is especially true where there is but one defendant. But it does not follow there cannot be more than one defendant who may be required to rebut an inference of negligence which may be the proximate cause of the damage. Nor does it deny the accountability of joint tort feasors. Where the operations complained of were solely within the control of several defendants each is held to the responsibility of going forward with the evidence according to the formula provided in Watkins v. Gulf Refining Company as stated above. The argument supporting the exceptions of no cause or right of action is *171 not fatal to the petition and was properly overruled by the trial court.
Passing to the merits of the case we observe there is no substantial controversy as to the relevant evidence resorted to for the fixation of blame, if any, upon Hearin or Interstate, or both. Our findings of the material facts are the same as determined by the judge a quo and we adopt his recitation thereof, with but slight revision:
Interstate Oil Pipeline Company owns a crude oil tank battery used to store crude oil transported by its pipeline from an oil field for Esso Standard Oil Company, the owner of the oil. Hearin Tank Lines, Inc. transports this oil by motor truck with tank trailer from this storage battery to Lake St. John in Concordia Parish, La., for Esso Standard Oil Company. Hearin and Interstate have no contractual relationship, each being employed by Esso Standard individually and not jointly.
The storage facility consists of two storage tanks with an unloading line leading from the tanks to the place where the tank trucks are filled or loaded near the tanks; there is an out flow valve built into the base of the tank which valve is connected with the unloading line. This loading line is also equipped with a valve located where the truck that hose is coupled for loading the truck tank.
The valve built into the base of the tank is so constructed that when it is closed and sealed, it can be opened only by breaking the seal, removing the handle and inverting the handle and replacing the same in its proper place. The tanks are enclosed with a wire, and entrance to the enclosed tanks is through a gate. The valve on the line leading from the tanks to the trucks is not equipped with a handle, but the handle from the valve at the base of the tanks may be used to open and close this valve or a wrench may be used to open and close the same.
The operation in filling and emptying these storage tanks appears to be substantially as follows: When the storage tank is being filled by the pipe line, the valve at the base of the tank is closed and sealed. After the tank is full, Interstate makes the necessary gauges and tests, breaks the seal on the outlet valve at the base of the tank, removes the handle, inverts the same and replaces it in its proper place, and notifies Hearin that the oil is ready to be moved; Hearin moves in with his tank truck and couples the hose on the truck to the loading line, and then opens the valve at the base of the tank. The driver then returns to the loading line valve near his truck and opens that valve to permit the oil to flow or be pumped into his truck tank and when his truck is loaded, the driver closes the load line valve, removes the handle and drops it on the ground near the valve, uncouples from the loading line and drives out. The driver does not close the outlet valve at the base of the tank until the tank has been emptied. The next truck moves in, couples the hose on his truck to the load line, opens the load line valve until his truck is full and then closes the load line valve, uncouples and moves out. This operation continues until the tank has been emptied. The driver of the truck that completes the emptying of the storage tank then closes the valve at the base of the tank, inverts the handle and after placing in its proper place, affixes a metal tape seal that has been left at the valve by Interstate.
On the morning of July 18, 1953, at about six o'clock a fire was started when a tank truck belonging to the Hearin Tank Lines, Inc., drove into the area near the storage tanks where a considerable amount of crude oil had escaped from the tanks and covered a goodly portion of the area around the tanks and loading ground and the oil was apparently ignited from the sparks or heat from the exhaust pipe of the tank truck. The escaped oil was discovered shortly before the fire and it was foundto be coming from the loading line where it was found that the valve was partly open with the handle connected to the valve, and a small stream of oil was flowing out covering the ground in the vicinity. The driver testified that he had driven into and over the oil covered ground before he recognized that it was oil on the ground.
*172 The fire destroyed a nearby tenant house and its contents, including some personal effects and an automobile belonging to plaintiff. The tank truck belonging to the Hearin Tank Lines, Inc., a defendant herein, was also destroyed.
Before this court the contention of Interstate is that plaintiff's damages were due solely to the negligence of Hearin in failing to turn off the valve at the storage battery, in addition to the valve at the unloading faucet; in that its driver drove a defective truck into the crude oil which had escaped onto the highway; and in failing to take precautions to prevent the crude oil from escaping after its employee left the storage battery on the afternoon of July 17, 1953. Hearin answers the charges of Interstate by pointing out that Riggs left the premises of Interstate at approximately five o'clock P.M., July 17, 1953; that it did not become dark for several hours thereafter and because several persons lived in the immediate vicinity of the unloading faucet it is probable that had Riggs not properly closed the faucet it would have been noticed by someone. Our attention is called to the fact that William Arrington and his wife testified they neither saw nor smelled oil in the area when they left Sonny Johnson's home at about eleven o'clock on the night of the 17th. It is argued the evidence shows none of Hearin's employees was on the subject premises after five o'clock P.M. of the 17th and until Riggs returned for his first load of oil on the morning of July 18th. From these facts Hearin argues that it had absolutely no control over the premises between the hours so stated. It would impose liability upon Interstate for negligence in placing the unloading faucet in an unfenced area accessible to trespassers and cattle; in permitting children to play in the general area of the storage battery and unloading faucet; for not having put locks on the outlet valves, and in having a defective valve at the unloading faucet.
Two acts produced the destructive fire and these were the leakage of the oil which covered the ground and its ignition by the Hearin truck. Manifestly, each of these causes or both was a contributing and proximate cause of the incident. Interstate had nothing to do with Riggs' action in driving the truck into the oil. Obviously, such act was an independent and intervening cause which contributed to plaintiff's loss. It is difficult to understand why Riggs failed (as he so testified) to recognize the crude oil into which he drove his truck. Certainly with his experience he knew the danger of such an act. The facts, therefore, indicate beyond doubt Hearin was solely responsible for igniting the oil.
The evidence adduced convincingly shows that after Interstate had signified one of its tanks was ready for unloading by breaking the seal by the gauger, and the inversion of the wrench, no employee of the Interstate had any further connection with the transfer of the oil to the transport tank. All succeeding acts were the sole responsibility of the employee of Hearin who was required to open the gauge at the base of the tank, remove the handle or wrench therefrom, and come back to the truck and use the same handle for the purpose of opening the faucet which turned the oil into the hose which ran from the faucet to the tank on the truck. The custody and responsibility of the handle or wrench used for opening the valves and the control of the valves were the complete responsibility of the Hearin employee until he had emptied the tank, returned the handle to the valve at the base of the tank, and closed and placed thereon the seal. It is conceded Interstate was the owner of the surface lease and was the warehouseman of the oil owned by Standard Esso, nonetheless the full and entire custody and control of the operations affecting the oil were the responsibility of Hearin during the period oil was being taken from the tank. We are, therefore, of the opinion that Hearin was properly cast in the judgment from which it has appealed.
The charges made by Hearin against Interstate in the several respects set forth above are not substantiated. Any negligence which might be inferred from failure of Interstate to fence in its unloading *173 faucet and prevent it being accessible to trespassers and cattle is too remote to constitute proximate cause. The same ruling applies to the charge of failure to place looks on the valves and to take other safety precautions to prevent the escape of crude oil from the unloading faucet. The evidence does not support Hearin's other charge of negligence, that of having a defective valve at the unloading faucet.
Plaintiff appealed from the judgment insofar as it dismissed his action against Interstate, and argues the latter should be cast under the provisions of Articles 667, 668 and 2317 of the LSA-Civil Code. Articles 667 and 668 have to do with the regulation of servitudes imposed by law, where by the use of his property a proprietor deprives his neighbor of the enjoyment of his, or causes damage to him. They are not applicable to occurrences of an unusual nature directly occasioned by human error. Article 2317 fixes responsibility not only for damages caused by persons but for the things we have in our custody. This article must be construed in connection with Articles 2318-2322 dealing with specific persons and things. Adams v. Golson, 1937, 187 La. 363, 174 So. 876. If this argument is sound in the instant case, notwithstanding our findings as above set forth, Interstate could be held liable only because of the ownership of the oil and tank facilities. Mere lawful ownership alone is not sufficient to create liability. It is the negligent use of the property which requires the owner to respond in damages. Plaintiff's damages occurred when the tank unloading operations were entirely in the custody and control of another, Hearin. Consequently, Article 2317 cannot be considered as authority for assessing Interstate with responsibility.
In conclusion, we resolve the judgment from which appealed correctly cast Hearin for the damages assessed and properly absolved Interstate from liability for actionable negligence. We have also considered carefully plaintiff's request that the award be increased from $600 to $700, but we find no error in the finding of the trial judge as to the value of the property lost. In the fixation of damages considerable discretion is permitted.
For the foregoing reasons the judgment from which appealed is affirmed, all costs, including costs of this appeal to be taxed against Hearin Tank Lines, Inc.