Gibson COLLINS, Appellant,

v.

TEXAS COMPANY, Appellee.

No. 17604.

United States Court of Appeals
Fifth Circuit.

June 3, 1959.

Rehearing Denied Aug. 10, 1959.

Charles F. Seemann, Robert U. Blum, New Orleans, La., for appellant.

D. Douglas Howard, George E. Burgess, Jr., Monroe & Lemann, New Orleans, La., for appellee.

Before HUTCHESON, Chief Judge, and TUTTLE and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

Involved here is the question of liability for damage to submerged oyster beds in the marshlands of Lafourche Parish, Louisiana occasioned by dragline dredging operations of an oil company undertaking to exploit its mineral leases. The District Court at the end of the plaintiff's case, instructed a verdict on the dual alternative ground of insufficient evidence of negligence and proof of actual damage.

We cannot rest affirmance on the ruling on damages. For we are of the view that under the circumstances of this case and the Louisiana doctrine of damages set forth in Brantley v. Tremont & Gulf Ry. Co., 1954, 226 La. 176, 75 So.2d 236, 239, reflecting an almost universal like development, Story Parchment Co. v. Paterson Parchment Paper Co., 1931, 282 U.S. 555, 563, 51 S.Ct. 248, 75 L.Ed. 544; McCormick, Damages, Ch. 4 (1935), there was sufficient evidence to show the fact of some damage resulting from acts of the Oil Company so that the uncertainty relates not

to the existence of damage as such, but to the measurement of its extent either physically or in terms of money. Fact and expert testimony authorized the jury to draw several significant inferences. Tests were run showing the nature of the oyster growth at points below, above, and at the area of heavy silting. The mortality rate was much heavier in the immediate area of the dredging. From a scientific standpoint the presence of the mud and silt which covered some of the oyster beds as well as that resulting from the spoil bank of dredged peaty material being washed back into the bayou had a decisive effect on the critical availability of oxygen and the biological oxygen demand. The jury had a short course in biology and the life of the oyster and from it could have concluded that action of the Oil Company caused injury to the growing oysters.

Of course, with the oyster bed submerged none of these facts could be established with mathematical certainty. But while the uncertainties might have called for the exercise of the judge's considered discretion in determining whether a given verdict for the plaintiff could stand, would be set aside, or modified by remittitur as an alternative to new trial, Kirby Lumber Corp. v. Laird, 5 Cir., 1956, 231 F.2d 812; Whiteman v. Pitrie, 5 Cir., 1955, 220 F.2d 914; Commercial Credit Corp. v. Pepper, 5 Cir., 1951, 187 F.2d 71; Marsh v. Ill. Cent. R. Co., 5 Cir., 1949, 175 F.2d 498, the evidence warranted conflicting inferences and a directed verdict on this score could not be ordered.

■ Assaying the alternative and now decisive question of proof of negligence presents both a procedural and a substantive matter. The unsuccessful plaintiff insists that in considering this problem, we must do it as though the evidence showed only the ownership of the oyster bed under a Louisiana State oyster bed lease with the tortious Oil Company having no legal status as a mineral lessee undertaking to exploit its leasehold. This is founded on the literalism of this record that the oil and gas lease issued

by the State of Louisiana covering the beds of harbors, bayous and waters (including Manila Bayou), and that of the Board of Commissioners for Lafourche Basin Levee District covering the adjacent marshland, were not formally offered in evidence. The great insistence of this point by the appellant no doubt stems from a realization that with the coexistence of mineral and oyster bed leases the case is not the one of simple trespass, but is rather one of proving failure on the part of the mineral lessee to use due care in the exploitation of the mineral lease. Doucet v. Texas Co., 1944, 205 La. 312, 17 So.2d 340; Vodopija v. Gulf Refining Co., 5 Cir., 1952, 198 F.2d 344; Vodopija v. Tennessee Gas Transmission Co., D.C.E.D. La., 1957, 152 F.Supp. 14.

The record shows that authenticated copies of the mineral leases were marked and identified as proposed exhibits in the defendant's Note of Evidence under a local rule of practice. The actual existence of the mineral leases was thus established without contradiction even though they were not formally introduced in evidence. In the face of F.R. Civ.P. 61, 28 U.S.C.A., and the like statutory command, 28 U.S.C.A. § 2111, we would therefore be reluctant to reverse and remand the case for a new trial merely to formally receive in evidence before a new jury documents conclusively established to exist for the sole purpose of then declaring that, as a matter of law, the evidence of negligence on the part of such mineral lessee was insufficient. But we are not faced with this general problem of determining how far a fact conclusively recognized in the whole record to exist, but not so in the record of evidence received by the jury, can be considered by trial or appellate court in passing on the motion for instructed verdict. This is so because in the plaintiff's opening statement to the jury, binding as an admission, Oscanyan v. Winchester Repeating Arms Co., 1881, 103 U.S. 261, 26 L.Ed. 539, it was asserted that "the Texas Company * * had a lease from the State of Louisiana

to explore for oil in the same area * *." And throughout the record, by oral testimony concerning the abortive negotiations between The Texas Company representatives and members of the Collins family about the proposed dredging, and in documentary exhibits showing the exact name and location of the well, there was sufficient intrinsic evidence that the Oil Company was engaged in operations to exploit its ownership of the mineral leases. Had the jury heard what Court and counsel knew to be a positive fact, the case would not have been enhanced into one for jury submission. It would only have made more positive that it was a case for determination of the sufficiency of the evidence under the Doucet principle.

■■ It was thus a case in which the plaintiff had to establish that the Oil Company in the rightful exercise of its leasehold rights had failed to exercise prudence and due care in the execution of this work. But the plaintiff did not meet this burden. Indeed, it is doubtful that he ever thought it was incumbent upon him to do so. The evidence did show that a bucket-type dredge and a dragline dredge, both operated by a dredging company pursuant to a contract with the Oil Company, did cut a deeper channel across Grand Bayou thence across Manila Bayou and a continuous new channel to marshland to the well site. For these purposes we may also assume that it was mud and silt from these operations which damaged the oyster beds. But apart from proof of the physical activities and resulting damage, there was no further proof warranting the inference that the work had not been prudently done.

On the theory of the plaintiff's experts, it seems likely that the greatest damage came from the silt washing back into the Bayou from the spoil bank of dredged peaty organic material deposited on the adjacent marshlands along the banks of the cut. But there was no proof from any source that there was any reasonably prudent way to avoid this either by doing the dredging differently, depositing the spoil further away, or by taking any suitable protective post-dredging steps. On the basic method the proof indeed showed that the one used was preferable to others. As between the dipper-dragline type of bucket dredge, on the one hand, and an hydraulic suction type dredge on the other, the evidence was uncontradicted that the hydraulic type was more destructive to marine life.

The plaintiff, preoccupied either with the notion of a simple trespass or his basic theory that the well site could have been reached by dredging from another direction, apparently thought that it was adequate to prove the physical activity of the dredging by the Oil Company and the resulting damage. But this was one of those situations now so frequent in an industrial society in which credible evidence must be brought forward upon which the jury can determine what a prudent person engaged in an activity beyond the everyday experience of men would do under the circumstances. What ought to have been done would depend in large part on what reasonably could have been done, on the availability of alternative methods, the balancing of the risks, hazards, cost, the means of avoidance of damage, and the like.

Here the plaintiff made no attempt to prove any of these factors. Apart from the claim of another route which we discuss separately, if the evidence of this record is sufficient, it is the equivalent of a factual-legal conclusion that the act of cutting of a channel through waters and marshland adjacent to known oyster beds by a dragline dredge depositing spoil in the water or on the marshlands is itself the proof of negligence. In other words, damage supplies the missing evidence of actual fault. We find nothing in the Louisiana law that justifies such a result. On the contrary, Louisiana considers that mineral lessees and oyster bed lessees each have valuable rights and such coexisting rights subject both to the "rule that every person must so

exercise his rights as not to unduly or negligently injure others; * * *." Consequently, the "burden of proof was on the plaintiff to show that his damages * * * were due to negligence on the part of the defendant, or to its disregard of plaintiff's rights under his oyster lease." Vodopija v. Gulf Refining Co., 5 Cir., 1952, 198 F.2d 344, 345–346.

The plaintiff's main theme that this well site could have been approached by a cut from the west thus making it unnecessary to deepen the channel across Manila Bayou or continue the channel into adjacent marshlands does not supply the missing link. To assert it is indeed to claim a pre-eminence for the oyster lease when Louisiana law declares that both must coexist through the adjustment of due care. In addition, there was no proof that this was the kind of proposed operation which was bound to produce substantial damage despite the greatest of care. Nor for that matter was there competent proof by those having requisite knowledge that the large and cumbersome equipment, floating derricks and nondescript flotilla of supporting craft for an oil well drilling operation reasonably could have used the alternative cut from the west.

Finally, the plaintiff asserts that there was a trespass eliminating all questions of due care. This is based on the fact that the well site was on a lease from the Board of Commissioners for Lafourche Basin Levee District and the cut through the marshland was through the property covered by that lease. The oysters, on the other hand, were on the bottom of the Bayou which was covered under the State Mineral Board lease. The lease being exploited was, therefore, not coincidental with the property covered by the oyster lease.

But we do not think that the principle announced in Doucet v. Texas Co., supra, was meant to be confined to leases from the State Mineral Board or to a situation in which the area covered by the pertinent mineral lease being exploited through dredging operations coincided exactly with the area of the damaged oyster beds. That case recognized for Louisiana that there were two valuable natural resources, both owned by the sovereign or its agencies and both of which should be fully exploited. To achieve that required that neither have absolute pre-eminence and that both must be accommodated through the flexible rule of prudence and reason. That principle would be thwarted if the rule of prudence had to cease and the arbitrary rule of technical trespass commence as the activity of the oil company lessee shifted now from areas within the shadowy boundaries of the bayous into areas within the equally uncertain boundaries of the marshlands, and back and forth, as work progressed.

The case was therefore one requiring proof from which reasonable minds could infer that the Oil Company had done something which a prudent person would not have done, or had done it in a way which a prudent person would not have performed it. The evidence was lacking and a directed verdict was proper.

Affirmed.