AYRES, Judge.
In this action plaintiffs allege that the manner in which defendant operated its cotton gin during the season of 1957 constituted an actionable nuisance whereby they sustained damages for which they here seek to recover compensation.
One of the plaintiffs is Shelton R. Bank-ston, who owns a 40-acre tract of land near Winnsboro, Franklin Parish, Louisiana, which he utilizes for a pasture and hay meadow, other than two acres thereof upon which his mother and father, Grover C. Bankston and Mrs. Laura Bankston, also plaintiffs, have a usufruct and on which their residence is situated.
*93 The defendant, during the summer of 1957, constructed a cotton gin upon a six-acre tract located some 270 to 320 yards north of the Bankston residence. Due to a slight delay in completion of the construction, operation of the gin did not begin until September 1, 1957, but continued for approximately three months thereafter. Lint, mote, burrs, trash, and dirt from the gin were carried through a discharge pipe placed at a distance of approximately 75 yards from the north boundary of the Bankston property. Operation of the gin was begun without awaiting construction of adequate safeguards or an incinerator to keep the aforesaid refuse from blowing and spreading to, and settling upon, the adjoining property.
No injunctive relief was sought and the record established that the source of plaintiffs’ complaints was remedied before the beginning of the next ginning season by the construction and use of an incinerator and a wall to prevent the spreading, to neighboring property, of the waste matter emitted from the gin.
Plaintiffs allege that the foresaid refuse spread to and drifted upon their property and sifted through the window screens and other openings to the residence, making it dirty, unclean, untidy, and unliveable.
Shelton R. Bankston predicates his claim upon the alleged loss of a hay crop estimated at 2,000 bales, valued at $1,500. Grover C. Bankston and Mrs. Laura Bank-ston base their claim upon inconvenience, mental anguish, and suffering, coupled with the additional specification, by Mrs. Bank-ston, of an aggravated asthmatic condition, in the amounts of $1,000 and $1,500, respectively. The defense is a general denial of plaintiffs’ allegations and demands.
From an adverse judgment, plaintiffs have appealed.
A property owner has the right to conduct, on his property, any lawful business not per se a nuisance so long as the business is so conducted that it will not unreasonably inconvenience a neighbor in the reasonable enjoyment of his property. Therefore, such business must be conducted with due regard to the rights of others. Nor does the owner have a right to erect or maintain a nuisance upon his own property to the injury of his neighbor, even in the pursuit of a lawful trade or business, or to there conduct a business in such a way as will be injurious or offensive to those residing in the vicinity. In such cases, liability is not predicated upon negligence, but is based on an obligation imposed upon property owners by the operation of law so that all may enjoy a maximum of liberty in the use and enjoyment of their respective properties. Devoke v. Yazoo & M. V. R. Co., 211 La. 729, 30 So.2d 816, and the authorities cited therein.
The foregoing was, in the Devoke case, characterized as a universally-accepted rule of law. This rule is in accord with the basic law of this State. LSA-C.C. Art. 666 recites that
“The law imposes upon the proprietors various obligations towards one another, independent of all agreements; and those are the obligations which are prescribed in the following articles.”
and Art. 667 that
“Although a proprietor may do with his estate whatever he pleases, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him.”
but, under Art. 668,
“Although one be not at liberty to make any work by which his neighbor’s buildings may be damaged, yet every one has the liberty of doing on his own ground whatsoever he pleases, although it should occasion some inconvenience to his neighbor.”
LSA-C.C. Art. 669 provides that
“If the works or materials for any manufactory or other operation, cause *94 an inconvenience to those in the same or in the neighboring houses, by diffusing smoke or nauseous smell, and there be no servitude established by which they are regulated, their sufferance must be determined by the rules of the police, or the customs of the place.”
With the foregoing principles in mind, consideration will be directed to the facts as disclosed by the record in the instant case. The facts relied upon by plaintiffs for recovery were amply established, even though not seriously controverted by the defendant. That lint, mote, burrs, trash, dirt, and dust were emitted from the gin in its operation and were blown through the discharge pipe and permitted to spread and drift on the Bankston property, and to sift through the screens and other openings of the residence, is shown, not only by the testimony of the several witnesses called by plaintiff, but by the introduction of 17 photographs of as many views and locations on the premises. The waste material spread to every portion of the Bankston property, decreasing in amount and intensity as the distances varied and increased from the gin. Grover 'C. Bankston, his son, J. 'C. Bank-ston, and Roy Collins testified the photographs portrayed a true representation of the condition of the property throughout the ginning season of 1957. Leland L. Hum-phries’ testimony was to the same effect as •of the time he endeavored to cut the hay from the meadow in October, 1957. This flow of mote, lint, trash, dirt, and dust from the gin over the Bankston property and into the residence continued almost without •cessation from the beginning to the end of the operations at the close of the season, be■coming worse, due to the bad condition of the cotton harvested, near the end of the season. The condition was also worsened .and became more aggravated when the winds blew directly from the gin toward plaintiffs’ property.
Accoiding to the testimony of Grover C. Bankston, the meadow, his lawn, and house ■became white as snow from the deposit of lint and other waste materials. This refuse clung to the fence and clogged the screens, much of which infiltrated the inside of the residence. Mrs. Bankston described the interior of her house as “awful.” Mrs. Ola Henry, employed to assist Mrs. Bank-ston with the housework, described the house as untidy, unclean, and dirty.
J. M. Thornton, who sold the six-acre tract to defendants for the gin site, and who was called as a witness by defendant, stated that defendant’s president and manager inquired of him three or four times during the 1957 ginning season as to whether the operation of the gin was interfering with him. Thornton stated he was told that if the gin could make it through that season an incinerator would be installed.
Plaintiffs’ complaints were not seriously controverted by any of the defendant’s witnesses, although Bankston testified that he made complaints to defendant’s manager, Leo Liles, and to at least two of its stockholders, B. D. Pardue and C. L. Wiltshire, who, other than Humphries, made no investigation as the result of the complaints made to them but seemingly were content they observed no damage. Liles, however, visited the Bankston residence and, after witnessing the conditions, promised to send laborers to “clean up” the situation, which, however, was never done. The conclusion is therefore inescapable that plaintiffs have sustained the burden of proof imposed upon them and have established that the manner of defendant’s operation of its gin constituted a nuisance.
Next for consideration is the question of the extent and amount of damages sustained by plaintiff, if any, through defendants’ aforesaid operations. First, to which attention will be directed, is the claim of Shelton R. Bankston as to his alleged loss of a hay crop. Plaintiff’s position is that the refuse from the gin deposited upon his meadow made hay cut therefrom not only unpalatable, but dangerous as feed for cattle. This, defendant strenuously denied and insisted that the hay was not adversely *95 affected by the refuse from the gin. The testimony on this point is about equally divided and is in irreconcilable conflict. Plaintiff and his witnesses, on the one hand, contend, as aforesaid, that his hay was rendered worthless by the deposits of waste material from the gin; whereas defendant’s witnesses claim that much of the refuse was valuable feed for cattle. We note, however, that both parties referred to advice, in support of their contentions, from “experts” on the suhj ect, one of whom was the parish agricultural agent, who, however, in the meantime, has died.
There was a further conflict as to the cause of plaintiff’s loss, if indeed he sustained a loss. Defendant contended that whatever loss of hay resulted was sustained because of the generally prevailing unsatisfactory weather conditions during the fall of 1957. Due to the conflict in testimony, we can only conclude that plaintiff has failed to support his claim by a preponderance of evidence to that degree of legal certainty that would warrant and justify a judgment in his favor.
 Turning to the claims of Grover C. Bankston and Mrs. Laura Bankston, we deem it unnecessary to entertain further discussion of their complaints. We find, however, there is no basis, because of a lack of proof, for Mrs. Bankston’s claim concerning an aggravation of a previously-existing asthmatic condition. However, the evidence, in our opinion, amply supports their claim for inconvenience, mental anguish, and suffering because of the infiltration of refuse, lint, trash, dust, and dirt from the gin into their residence. In a strikingly similar case, Walsworth v. Farmers’ Gin Co., 161 La. 246, 110 So. 338, plaintiff was awarded $250 in damages in 1926. Under present economic conditions, and, even though considering that the Bankston residence is located at a much greater distance from the gin than was the Walsworth residence, and that the inconvenience and annoyance was probably not as great, we think $400 would be an adequate award m compensation of the damages sustained by -plaintiffs Grover C„ Bankston and Mrs. Laura Bankston in the instant case.
For the reasons assigned, the judgment appealed, insofar as the same rejected the demands of plaintiffs Grover C. Bankston and Mrs. Laura Bankston are concerned, is-annulled, avoided, reversed and set aside;, and it is now ordered, adjudged and decreed there he judgment herein in favor of plaintiffs Grover C. Bankston and Mrs. Laura Bankston against the defendant, Farmers Cooperative Gin of Winnsboro,. for the full sum of $400, with legal interest thereon from judicial demand until paid, with all costs, including cost of the appeal;, and, otherwise, said judgment is affirmed.
Reversed in part and rendered and affirmed in part.