**BEGOVICH, GONZALES AND PLAI-SANCE, a Partnership Composed of Jack Begovich, Sr., Almon Gonzales and Frank Plaisance, Plaintiffs,**

v.

**The TEXAS COMPANY, Defendant.**

**Civ. A. No. 4754.**

United States District Court
E. D. Louisiana,
New Orleans Division, Division "C".

Oct. 12, 1962.

Daniel Wiemann, Cleveland Marcel, Houma, La., Harold Molaison, Gretna, La., for plaintiffs.

Hugh M. Wilkinson, Wiley G. Lastrapes, New Orleans, La., for defendant.

WEST, District Judge.

This suit was brought in 1954 by the partnership then composed of Jack Begovich, Sr., Almon Gonzales, and Frank Plaisance, against The Texas Company (now known as Texaco, Inc.) for alleged damages to oyster bedding grounds. Since the filing of the suit, Jack Begovich, Sr. died and his heirs were properly substituted as parties plaintiff. The case was tried to the Court, without the intervention of a jury, and at the commencement of the trial, the plaintiffs stipulated

that there was no question of trespass involved, but that plaintiffs' claim rested entirely on the alleged negligent destruction of plaintiffs' oysters by representatives of the defendant company. At the close of plaintiffs' case, the defendant moved for a judgment of involuntary dismissal, pursuant to Rule 41(b) of the Federal Rules of Civil Procedure, 28 U. S.C.A., and the motion was granted. In connection therewith, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

**1.**

Complainants are members of a partnership, and are all citizens of the State of Louisiana. Defendant is a corporate citizen of a state other than Louisiana, authorized to do and doing business in the State of Louisiana.

**2.**

Defendant was the lawful owner of two contiguous mineral leases granted to it by the State of Louisiana on May 11, 1951, and November 22, 1952, respectively, which mineral leases were duly recorded and included all or substantially all of the bottom of Lake Athanasio, sometimes also known as Bay Seago, in St. Bernard Parish, Louisiana.

**3.**

Subsequent to the granting of these mineral leases to the defendant, the State of Louisiana granted to the plaintiffs a bedding-ground lease for the cultivation of oysters covering 1,200 superficial acres of the water bottom of the same Lake Athanasio. Lake Athanasio covers approximately 3,400 acres, and this bedding-ground lease did not delineate the specific 1,200 acres of this 3,400 acre lake bottom covered by the bedding-ground lease.

**4.**

No survey was ever made showing the exact location of the 1,200 acres covered by the bedding-ground lease, and no "ranges, monuments, stakes, buoys, and the like" were ever employed by the plaintiffs to "locate accurately and fix the limits of the water bottoms embraced in each lease" as required by Section 425 of Title 56 of the Louisiana Revised Statutes. A copy of plaintiffs' lease covering "1200 acres in Bay Seago" was filed in evidence attached to a survey of Bay Seago made on January 16, 1953, by James N. McConnell. While the certification by McConnell on the survey states that he "marked . . . the boundaries and limits of a portion of the bed or bottom of Bay Seago for oyster bedding purposes, containing 1200 superficial acres", nevertheless the survey actually shows all of Bay Seago, and no such indications of boundaries of the 1,200 acres actually leased appears on the survey. The evidence clearly established that no such markers or boundary designations were present at the times involved in this litigation.

**5.**

The plaintiffs took the position that their 1,200 acres of bedding-grounds were "scattered throughout the entire lake", and they did, in fact, cultivate oysters on scattered areas throughout the lake bottom. It is an established fact that the plaintiffs did bed oysters in areas covered by defendant's mineral leases on the water bottom of Lake Athanasio.

**6.**

During the year preceding the filing of this law suit on November 1, 1954, the defendant company, pursuant to its rights and obligations under the mineral leases above referred to, conducted certain dredging operations for the purpose of dredging two approach canals to sites in Lake Athanasio selected by their engineers as locations for prospective oil wells. These approach canals were used to float drilling rigs and other necessary equipment to and from the drilling sites.

**7.**

These approach canals were dredged by the defendant across portions of the bottom of Lake Athanasio, and within the area covered by defendant's mineral leases. The canals also crossed areas of the lake bottom on which plaintiff had

bedded oysters for cultivation, and as a consequence, some of the oysters thus bedded were destroyed. The first canal dredged was about 1,200 feet long and 75 feet wide, necessitating a spoil bank of about 100 feet on each side of the canal, and the second canal was about 2,800 feet long and 75 feet wide with a spoil bank of about 100 feet on each side of the canal.

8.

In dredging the approach canals, the defendant used the method known as the dipper-dredge method, which consisted of digging the canal with a dragline bucket or dipper and simply depositing the spoil removed along the sides of the dredged canal, beneath the water. This, of course, resulted in the spoil thus removed from the dredged area being deposited along the sides of the canal in such a manner as to necessarily cover up any oysters that might be bedded in that area. Oysters thus covered up will, in all probability, be destroyed. The Court finds no evidence that any excess or unnecessary amount of spoil was thus deposited along the sides of the canal, nor that the defendant was in any way negligent in the manner in which this dipper-dredging operation was performed.

9.

It would have been possible to have used a suction dredge in digging the canal. If this system had been used, it might have been possible to have removed the spoil from the dredged area by suction, and to have deposited the spoil at some location along the bank, and to have thus avoided covering up any bedded oysters with the spoil. This method of suction dredging is considerably more expensive than the method of dipper-dredging used by the defendant, and the evidence is far from conclusive that such a method would even have been practical under the circumstances of this case.

10.

The dipper-dredge method of dredging these canals is the method most often used by the oil industry, and the use of such a process does not, of itself, constitute negligence.

11.

Lake Athanasio being considered navigable waters, the required permits for dredging the access canals were obtained by the defendant from the United States Army Corps of Engineers, and the method of dredging was also approved.

12.

For five or six months prior to October 9, 1953, defendant's engineers were in the area of Lake Athanasio preparing for the selection of possible oil well sites. On or about October 9, 1953, Allan N. Peirce, III, the claims and right of way agent for the defendant company, was notified that the engineers had selected a well site and had set out stakes for an approach canal from the south entrance to the lake, coming from a small island to the south called Coon Nest Island, through Canal Pecal, into Lake Athanasio, but that the plaintiffs had objected to the use of that particular route on the grounds that it would traverse and damage a considerable length of their best oyster beds. Whereupon, Mr. Peirce immediately went to Lake Athanasio to negotiate with the plaintiffs. He offered the plaintiffs $1,000 to cover the expense of removing the oysters along the proposed route, which offer was rejected by the plaintiffs.

13.

When this offer was rejected, the defendant changed its proposed route and purchased a right of way for $2,500 from the Delacroix Corporation across a point of marshland between Lake Athanasio and Eloi Bay to the east. This plan caused the channel to approach the well site from Eloi Bay to the east, across the point of marshland, and thus protrude from the marshland only about 600 feet in a southwesterly direction into Lake Athanasio to the proposed well site. This route was the shortest possible route to the well site, and required the shortest possible traversing of plaintiffs' oyster beds.

**14.**

Mr. Peirce, in company with James M. McConnell, director of the Oyster and Water Bottom Division of the Louisiana Department of Wild Life and Fisheries, went to talk with the plaintiffs again, and after advising the plaintiffs of the new route for the canal, offered the plaintiffs the sum of $1,200 to cover expenses of removing any oysters bedded in the proposed route for the canal. This offer was also refused by the plaintiffs.

**15.**

On October 22 or 23, 1953, Mr. Peirce, accompanied by Dr. Harry Bennett, a zoologist from the Louisiana State University, went to the site of the proposed canal for the purpose of appraising the value of the oysters in the area, and at this time informed the plaintiffs that with or without their approval, the canal would be dredged as planned. The plaintiffs were again advised to remove the oysters bedded in the area.

**16.**

Dredging of the canal commenced on October 23, 1953, and was completed on November 1, 1953. Of the eight days required to dredge this canal, approximately six days were required to dredge the area from Eloi Bay across the marshland to the edge of Lake Athanasio. During this entire time, the plaintiffs could and did see the operation, and were well aware of the exact location that the canal was to assume out into Lake Athanasio and across a portion of their oyster bedding grounds.

**17.**

Plaintiffs had ample time to have removed the oysters from the path of the proposed canal, but failed and refused to do so, giving as their reason that they were busy, "fishing and selling oysters".

**18.**

No evidence was introduced with specific reference to the dredging of the second approach canal, and consequently, there is no issue before the Court concerning that phase of the operation.

**19.**

Plaintiffs had ample opportunity to have minimized or even prevented entirely any damage to their bedded oysters, but failed and refused to do so.

**20.**

There was an absolute lack of any evidence whatsoever in this case to even indicate that the defendant was guilty of any negligence in the dredging of their approach canals. While there is no doubt that some of the plaintiffs' bedded oysters were destroyed as a result of the dredging operation, nevertheless, the defendant was in the lawful pursuit of his oil exploration activities on property on which it had a valid mineral lease, and there being a complete absence of any showing of negligence on the part of the defendant, it cannot be held liable to the plaintiffs for the damage occasioned thereby to the plaintiffs' bedded oysters. The evidence in this case convinces this Court that the loss sustained by the plaintiffs was occasioned more by the plaintiffs' refusal and failure to act than by any negligence on the part of the defendant.

**21.**

At the commencement of the trial, it was stipulated by plaintiffs' counsel that no claim was being made in this suit for any damages caused by trespass of the defendant, but the plaintiffs' claim was based entirely on the allegation of negligence on the part of the defendant, resulting from the manner in which its dredging operations were conducted; from negligent operation of vessels through the canals; and from negligent handling of spoil and waste materials. The Court concludes that plaintiffs have failed to carry the burden of proving these allegations of negligence.

CONCLUSIONS OF LAW

**1.**

Jurisdiction over the subject matter and the parties thereto properly lies with this Court.

**2.**

 The defendant had a legal right, and, in fact, was obligated under its mineral lease, to reasonably and properly develop the area covered by its mineral lease for oil production, and the rights of the plaintiffs under their oyster bedding lease were necessarily subject to that right. Every person must so exercise his rights as not to unduly or negligently injure others. The burden of proof was on the plaintiffs in this case to show that the defendant, in the exercise of its rights under its mineral lease, failed to use due care and had thus negligently injured the plaintiffs. Vodopija v. Gulf Refining Co., 5 Cir., 198 F.2d 344.

**3.**

Under the law of Louisiana, mineral lessees and oyster bedding lessees each have valuable rights, and such coexisting rights subject both to the rule that every person must so exercise his rights as not to unduly or negligently injure others. Since the defendant was conducting its operation pursuant to valid mineral leases granted by the State of Louisiana covering the same area on which the plaintiffs had or may have had a valid oyster bedding lease, also granted by the State of Louisiana, the defendant had both a right and an obligation to conduct its oil explorations on said property and was only obligated to conduct said operations in a manner that would not negligently cause damage to the plaintiffs who held oyster bedding leases on the same water bottoms. This case is therefore one requiring proof from which reasonable minds could infer that the defendant oil company had done something which a prudent person would not have done or had done it in a way in which a prudent person would not have performed it. Collins v. Texas Company, 5 Cir., 267 F.2d 257.

**4.**

This Court concludes that the evidence was completely lacking in this regard. The record in this case clearly supports the conclusion that the defendant company did all that it could possibly have been expected to do in order to minimize damages to the plaintiffs' oysters, while the plaintiffs, on the other hand, did nothing whatsoever to minimize the damages occasioned by the dredging of the canals despite the clearly established fact that they could have done so. Consequently, this Court concludes that the plaintiffs failed completely to carry the burden of proving their claim, and thus the motion of defendant for a judgment of involuntary dismissal at the close of plaintiffs' case pursuant to Rule 41(b) of the Federal Rules of Civil Procedure was granted.