Leo BIANCHINI and Joseph (Joe) Omes,
Plaintiffs-Appellants,

v.

HUMBLE PIPE LINE COMPANY,
Defendant-Appellee.

No. 72-2551.

United States Court of Appeals,
Fifth Circuit.

April 17, 1973.

Rehearing and Rehearing En Banc
Denied June 15, 1973.

Plauche F. Villere, Jr., New Orleans, La., for Bianchini.

Frank W. Roccaforte, Joseph R. Raggio, John H. Taylor, Baton Rouge, La., for Omes.

Murphy Moss, William R. Forrester, Jr., New Orleans, La., for defendant-appellee.

Before RIVES, GOLDBERG and MORGAN, Circuit Judges.

GOLDBERG, Circuit Judge:

This is an appeal from the involuntary dismissal of consolidated diversity actions that arose out of a 1969 marine oil spill. Appellants are oyster farmers who sought to recover against appellee, the Humble Pipe Line Company, for damages to oysters, oyster reefs, and oyster leases resulting from oil emanating from one of Humble's twelve-inch pipelines submerged in Barataria Bay off Saturday Island in Plaquemines Parish, Louisiana. Humble admitted the spillage had occurred but alleged that the spill was caused solely by an "unknown marine vessel" coming into contact with and rupturing the pipeline. The case was tried to the court, and at the conclusion of appellants' case, the United States District Judge entered comprehensive findings of fact and conclusions of law and dismissed the actions pursuant to Rule 41(b), F.R.Civ.P. We affirm.

Appellants seek to prevail under any of three alternative theories of liability, which they label (1) strict liability, (2) *res ipsa loquitur,* and (3) negligence. Before analyzing the trial court's treatment of these theories, we reiterate that this is a non-jury case in which extensive findings of fact were entered below. Accordingly, any review of the application of those theories of liability must take place within the context of those factual findings, and our first inquiry must be whether those findings can withstand appellate review.

The court below specifically found, inter alia:

(1) On December 5, 1969, an oil slick occurred in the area of Saturday Island in Barataria Bay;

(2) Investigation proved that the oil slick was coming from the Humble pipeline;

(3) The pipe itself was in excellent condition;

(4) The pipeline had been constructed in accordance with a permit issued by the United States Army Corps of Engineers in 1955 and had been maintained in conformity with all requirements and specifications of the Corps;

(5) The pipeline carried only crude oil and a mixture of distillate;

(6) The leak occurred at a point near a passageway or unofficial channel that no prudent boat operator would have navigated with a vessel having a draft in excess of six feet;

(7) A 110-foot section of the pipe was damaged with parallel creases, two of which contained small ruptures through which the oil escaped;

(8) The oil leak resulted from the ruptures, which were in turn caused solely by contact with protrusions from an unknown marine vessel that plowed the mud cover off of the pipeline; and

(9) The oil leak did not result from any negligence on the part of Humble in

the placement, maintenance, or operation of the pipeline.

Thus, the District Judge concluded, albeit not *in haec verba*, that the unknown marine vessel constituted an intervening and superseding cause of the oil spill, *i. e.*, that the damages were in no way caused or contributed to by any negligence on the part of Humble but were caused solely by the intervening force.

■ Findings of fact are measured on appellate review by the "clearly erroneous" standard. Rule 52(a), F.R.Civ.P. *See also* McAllister v. United States, 1954, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20; United States v. United States Gypsum Co., 1948, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746. We have previously said of this test,

> "The question is not simply whether the reviewing court would have found otherwise but whether the trial court could permissibly find as it did. The reviewing court should upset a finding only when it 'is convinced on the whole record that the finding does not reflect the truth and right of the case.' Wright, Federal Courts § 96, at 432."

Movible Offshore, Inc. v. M/V Wilken A. Falgout, 5 Cir. 1973, 471 F.2d 268, 271.

Our scrutiny of the instant record does not leave us "with the definite and firm conviction that a mistake has been committed." *See* United States v. United States Gypsum Co., 1948, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed.2d 746, 766; Volkswagen of America, Inc. v. Jahre, 5 Cir. 1973, 472 F.2d 557 (Jan. 30, 1973). To the contrary, we find in the instant record plenteous evidence from which the trial judge could permissibly make these findings, and we reject any suggestion that these fact-findings were "clearly erroneous."

■ Operating within the framework of the facts as found by the trial judge, we turn now to a consideration of the trial court's disposition of the three theories of recovery advanced by appellants. First, appellants urge that this is a case in which Louisiana would apply a rule of "strict" or "absolute" liability and hold Humble liable for the damages caused by the escape of its oil regardless of negligence. Seeking to establish a liability analogous to that created in the classic case of Rylands v. Fletcher,[1] appellants insist that the Louisiana cases applying Articles 667 through 669 of the Louisiana Civil code require that "liability without fault" be imposed here.[2] In support of this theory, appellants argue that the defendant's activity need not be "ultra-hazardous,"[3] that the defendant's lack of negligence is irrelevant,[4] and that the presence of any "intervening

1. Fletcher v. Rylands, L.R. 1 Ex. 264 (1866); Rylands v. Fletcher, L.R. 3 H.L. 330 (1868). Blackburn's formula was stated as follows:
   > "We think that the true rule of law is, that the person who, for his own purposes, brings on his land and collects and keeps there anything likely to do mischief, if it escapes, must keep it at his peril; and if he does not do so, is *prima facie* answerable for all the damage which is the natural consequence of its escape."
   Lord Cairns limited the doctrine to any "non-natural use" of the land.

2. *See, e. g.*, in addition to the cases cited in notes 3–5 *infra*, Chaney v. Travelers Ins. Co., La.Sup.Ct.1971, 259 La. 1, 249 So.2d 181 (strict liability for damages caused by vibrations from canal construction); Gullatt v. Ashland Oil & Refining Co., La.App.1971, 243 So.2d 820 (mineral lessee "absolutely liable" for destruction of water well by lessee's blasting operations). *See also* Watkins v. Gulf Refining Co., La.Sup.Ct.1945, 206 La. 942, 20 So.2d 273 (liability for crop damage caused by a well blowing out); Maryland Casualty Co. v. Rittiner, La.App.1961, 133 So.2d 172 (spread of fire from defendant's work with hot tar).

3. Langlois v. Allied Chem. Corp., *infra* note 4; Bankston v. Farmers Cooperative Gin, La.App.1960, 116 So.2d 91 (spread of airborne debris from cotton gin).

4. Langlois v. Allied Chem. Corp., La.Sup. Ct.1971, 258 La. 1067, 249 So.2d 133 (inhalation of gas and chemical fumes escaping from chemical company); Craig v. Montelepre Realty Co., La.Sup.Ct.1968,

cause" does not bar liability.[5] In reply, Humble argues that "liability without fault" is not a proper theory by which to hold oil companies liable to oystermen,[6] that in any event the doctrine applies only where the defendant's activity is "ultra-hazardous,"[7] and that if negligence is lacking on the part of the defendant, "intervening cause" bars liability.[8]

The treacherous footing awaiting those who seek either to impose or to avoid liability for damages caused by escaping oil has generated much scholarly analysis. *See, e. g.,* Keeton & Jones, Tort Liability & the Oil & Gas Industry, 35 Texas L.Rev. 1 (1956); Keeton & Jones, Tort Liability & the Oil & Gas Industry II, 39 Texas L.Rev. 253 (1961). *See also* Green, Hazardous Oil & Gas Operations: Tort Liability, 33 Texas L. Rev. 574 (1955). It appears that Louisiana law regarding liability for oil pollution is particularly fugacious, *see generally* Robertson, Tort Liability for Oil & Gas Operations in Louisiana, 14th Annual L.S.U. Institute on Mineral Law 49 (1967), but we find that we need not immerse ourselves completely in an extended review of the refinements of that jurisprudence. Even assuming *arguendo* that all other conditions that would call for "liability without fault" are present, we find that Louisiana would not impose liability where (1) the oil company was not negligent, and (2) the calamity was caused solely by a superseding and intervening event.

The "intervening cause" limitation on Louisiana's doctrine of absolute liability clearly appears in Town of Jackson v. Mounger Motors, *supra* note 8:

"When the principle [of absolute liability] is applicable, strict liability results from the uses of the property which cause harm to the neighbor, the resulting damage itself constituting 'fault' even in the absence of any

252 La. 502, 211 So.2d 627 (piledriving); Gotreaux v. Gary, La.Sup.Ct.1957, 232 La. 373, 94 So.2d 293 ("strict liability" for drifting herbicide despite compliance with agricultural regulations); Fontenot v. Magnolia Petroleum Corp., La.Sup.Ct. 1955, 227 La. 866, 80 So.2d 845 ("absolute liability" for damage to houses resulting from defendant's blasting operations); Wright v. Superior Oil Co., La.App.1962, 138 So.2d 688 (damage to water wells caused by blasting); Pate v. Western Geophysical Co. of America, La.App.1956, 91 So.2d 431 (damage to water wells caused by blasting); Bruno v. Employers Liability Assurance Corp., La.App.1953, 67 So.2d 920 (damage to neighbors caused by non-negligent piledriving).

5. Brantley v. Tremont & G. Ry., La.Sup.Ct. 1954, 226 La. 176, 75 So.2d 236 (railroad liable for damages caused by cutting hole in dam to allow trapped water, swollen by heavy rains, to drain).

6. Collins v. Texas Co., 5 Cir. 1959, 267 F. 2d 257 (Louisiana case: no liability absent negligence for damage to oysters caused by lawful dredging operations); Vodopija v. Gulf Refining Co., 5 Cir. 1952, 198 F.2d 344 (Louisiana case: no liability for damage to oysters resulting from lawful dredging); Begovich v. Texas Co., E.D.La.1962, 209 F.Supp. 412 (absent negligence, oil company not liable to oystermen for damages caused by non-negligent dredging); Vodopija v. Tennessee Gas Trans. Co., E.D.La.1957, 152 F. Supp. 14 (no liability absent negligence for damage to oysters resulting from lawful pipeline construction); Doucet v. Texas Co., La.Sup.Ct.1944, 205 La. 312, 17 So.2d 340 (liability for damage to oysters caused by negligent discharge of oil); Lauzon v. Trahan Drilling Contractor, Inc., La.App.1971, 247 So.2d 236 (oil company liable for negligently damaging oyster beds), writ ref'd, no error of law, 259 La. 69, 249 So.2d 206; Skansi v. Humble Oil & Refining Co., La.App.1965, 176 So.2d 236 (liability for damage to oyster beds where oil spill inferentially caused by negligence).

7. *Cf.* Hilliard v. Schuff, La.Sup.Ct.1972, 260 La. 384, 256 So.2d 127 (articles 667–69 not violated by fuel storage unless "substantial hazard" thereby created); Langlois v. Allied Chem. Corp., *supra* note 4 (storage activity itself dangerous).

8. Terre Haute Plantation, Inc. v. Louisiana & A. Ry., La.App.1968, 210 So.2d 566 (railroad not liable for fire spreading from its right-of-way); Town of Jackson v. Mounger Motors, La.App.1957, 98 So.2d 697 (owner of used car lot not liable for third person's backing car into plaintiff's building, even though owner had left keys in unattended automobile).

showing of negligence by the offending neighbor . . . . [But] it is 'not applicable to occurrences of an unusual nature directly occasioned by human error', especially that of an intervening stranger, Arrington v. Hearin Tank Lines, La.App. 2 Cir., 80 So.2d 167, at page 173."

98 So.2d at 699

"Furthermore, even when the doctrine is applicable, a recognized limitation thereof is that liability does not extend when the damage results from an independent, intervening agency which was unforeseeable by a reasonable person . . . ."

*Id.* at 700.

■ Appellants' reliance on Brantley v. Tremont & G. Ry., *supra* note 5, is misplaced. In that case the defendant's activity was a *concurrent cause* with the intervening event, but Terre Haute Plantation, Inc. v. Louisiana & A. Ry., *supra* note 8, firmly established that where the *sole cause* of the damage is the intervention into defendant's lawful activities of some outside agency or force, liability will not be imposed where defendant was in no way negligent in allowing or failing to prevent the intervention. Here, both the existence of such an intervening cause and the absence of any negligence on the part of Humble were found as matters of fact. Having refused to overturn those fact-findings, we hold that the trial court correctly ruled that "liability without fault" was thus unavailable here.

■ Appellants' second theory of recovery rests on their argument that the doctrine of *res ipsa loquitur* justifies pinioning liability on negligence that should have been inferred from the mere fact that an oil spill occurred. Louisiana requires that three factors be shown before this doctrine may be invoked:

"It is now well established in our jurisprudence that in order for the principle or rule of res ipsa loquitur to apply, it must be shown (1) that the circumstances attending the accident were such as to create an inference of negligence on the part of the defendant; (2) control and management of the instrumentality responsible for the damage or injury was vested exclusively in the defendant; and (3) plaintiff was not in a position to know the particular circumstances which caused the instrumentality concerned to operate to his injury whereas defendant, being in such position, possessed superior knowledge or means of information regarding the cause of the mishap. Dorman v. T. Smith & Sons, 223 La. 29, 64 So.2d 833."

Murphy Corp. v. Petrochem Maintenance, Inc., La.App.1965, 180 So.2d 716, 724. The parties devote much of their briefing to the question of whether these factors were or were not satisfied in the court below, but we need not address that issue because we find that *res ipsa loquitur* has no relevance to this appeal.

■ The doctrine of *res ipsa loquitur* is little more than an evidentiary technique that allows an injured person, who would not otherwise be able to do so, to show a *prima facie* case of negligence. Thus, when the doctrine's initial factors are shown and defendant is the person who had exclusive control of an instrumentality that injured plaintiff in a way that ordinarily would not have occurred unless there was negligence on the part of defendant, the burden shifts to defendant to disprove the inference of negligence or to show that he did not cause the damage. *See* Watkins v. Gulf Refining Co., *supra* note 2.[9] Negligence is nonetheless the basis for imposing liability, Langlinais v. Geophysical Service, Inc., La.Sup.Ct.1959, 237 La. 585, 111 So.2d 781, and defendant may clearly avoid an adverse judgment by satisfying the trier of fact that his action or inaction did not cause the harm. Hoyt v.

9. *See also* Arrington v. Hearin Tank Lines, Inc., La.1955, 80 So.2d 167; Ybarra v.

Spangnard, Calif.1944, 25 Cal.2d 486, 154 P.2d 687.

Amerada Petroleum Corp., La.App.1953, 69 So.2d 546, 547–548.

 The rule is merely evidentiary, and it may be overcome either by proof that defendant was not negligent or by proof that defendant's behavior was not a cause of the injury:

"As this court has often said, the doctrine of res ipsa loquitur is a rule of evidence, the applicability of which is to be determined in each case at the conclusion of the trial. When the doctrine of res ipsa loquitur is applicable to a case, the accident which has caused plaintiff's damages makes out a prima facie case of negligence by the defendant, and the burden is then on the defendant to show absence of negligence on its part."

Day v. National U. S. Radiator Corp., La.Sup.Ct.1961, 241 La. 288, 128 So.2d 660, 664. Furthermore, although it is said that the applicability of the doctrine should normally await the conclusion of the trial, e. g., Langlinais v. Geophysical Service, Inc., *supra*, it ceases to apply at whatever point defendant convinces the fact-finder that defendant's negligence was not responsible. Here, the trier of fact found that (1) the negligence of an unknown marine vessel was the sole cause of the oil spill, (2) Humble was not a cause of the loss, and (3) Humble was not negligent. Those findings are not clearly erroneous and Humble has thus carried its burden of showing that it was not responsible, which it did by showing that someone else was to blame. Without suggesting what the result might be were these three fact findings not present, we hold that *res ipsa loquitur* is of no avail to appellants on this appeal.

 In the light of these same fact-findings, appellants' final theory of liability, ordinary negligence law, obviously must also fail. It is hornbook law that in order to recover for negligence, plaintiffs must prove that defendant was negligent. That negligence was alleged, but the trier of fact has conclusively determined that Humble was not negligent. That finding not being clearly erroneous, there the journey ends. Movible Offshore, Inc. v. M/V Wilken A. Falgout, 5 Cir. 1973, 471 F.2d 268, 272–273.

We have considered each of appellants' remaining points of error and conclude that each is without legal merit. The fact that the oil on these troubled waters was floating from Humble's line is a raw fact that does not by itself establish tortious culpability. The trial court having thoroughly shelled the facts from the allegations, Humble's ownership of the pipe that was punctured is the only fact upon which the oystermen rely. Standing alone, it cannot shore up the factual deficiencies in this case. There is no doubt that these appellants were in fact injured through no fault of their own. But within the context of the findings of fact entered below, there is equally no doubt that appellants have failed to bring themselves within the borders of any theory that will allow them to cast the legal responsibility for those losses on Humble.

Affirmed.