**64 So.2d 833**

**DORMAN et al. v. T. SMITH & SON, Inc.**

Nos. 40692, 40699.

March 23, 1953.

Rehearing Denied April 27, 1953.

Roos & Roos, for applicant, George J. Dorman.

Deutsch, Kerrigan & Stiles and Breard Snellings, New Orleans, for defendant-respondent, T. Smith & Son, Inc.

May & Carrère, New Orleans, for intervenor-appellee, Travelers Ins. Co.

LE BLANC, Justice.

Plaintiff, George Dorman, instituted this action in tort against the defendant T. Smith & Son, Inc., to recover the sum of $97,000 as damages for injuries which he sustained on June 16, 1947 by reason of an accident which he alleges was caused by the gross and careless recklessness and negligence of the agents, servants and employees of the said defendant while acting in the scope and under authority of their employment. Plaintiff was an employee of Alcoa Steamship Co., Inc. and he also instituted a suit against his employer under the Workmen's Compensation Statute of Louisiana, LSA–R.S. 23:1021 et seq. Whilst in the present suit he alleged specific acts of negligence on the part of the employee of T. Smith & Son, Inc., all of which were denied by that defendant, he did not prove what allegations he had made and the case apparently was submitted to the district court as one arising under the doctrine of res ipsa loquitur.

Without mentioning res ipsa loquitur in his reasons for judgment the trial judge seems to have based his opinion on that doctrine and rendered judgment in favor of the plaintiff awarding him damages in the sum of $10,000. Plaintiff's suit against the employer for workmen's compensation is still pending and we learn from the record that it is awaiting the final judgment to be rendered in this case. The workmen's compensation insurance carrier of Alcoa Steamship Co. Inc., Travelers Insurance Company, paid certain amounts of compensation as well as medical fees to the plaintiff and it has intervened in this suit asking that in the event plaintiff should recover judgment against the defendant that there be judgment also in its favor and against the defendant for the amount so paid by it and for any future amounts it may have to pay as compensation and medical expenses. The judgment of the district court so decreed and in addition to the compensation and medical expenses already paid awarded the intervenor the further sum of $175 for attorney's fees. The defendant appealed from that judgment to the Court of Appeal for Orleans Parish. That Court considered the case purely from the standpoint of whether the doctrine of res ipsa loquitur was applicable and decided it was not. One of the judges dissented. As a consequence the judgment of the district court was reversed and plaintiff's suit and the intervention of the Travelers Insurance Company were both dismissed. 55 So.2d 587. Plaintiff thereupon applied to this Court for writs of certiorari or review. A similar application was presented on behalf of the Travelers Insurance Company. Writs were granted in both cases and the matter is now

before this Court for its consideration and decision.

The only issue remaining in the case is with respect to the applicability, vel non, of the doctrine of res ipsa loquitur under the facts that are presented. We therefore will limit our consideration and discussion of the case in the light of that doctrine taking up first the doctrine itself and afterwards we will discuss the facts involved and apply them, as we conclude, to the particular elements of the doctrine that are involved.

In 65 C.J.S., Negligence, at page 985, immediately preceding the statement of the rule of res ipsa loquitur there appears the following statement under section 220(1):

"As discussed supra § 204, it is a general rule that negligence on the part of defendant is never presumed but is a matter for affirmative proof; hence, in the absence of special circumstances sufficient to bring into operation the doctrine of res ipsa loquitur, discussed infra, §§ 220(2)–220(11), the mere happening of an accident or occurrence of an injury does not raise a presumption or authorize an inference of negligence on the part of defendant and does not warrant a verdict in favor of the injured party. However, the circumstances of an accident may be such as to warrant an inference of negligence in the absence of evidence to the contrary.

"The foregoing general principle has been applied to a great variety of

particular defects and occurrences, including cases of injuries caused by falling objects, or by the falling, tripping, or slipping of the injured person on a floor or stairway or into a hole."

In this case we are concerned with injuries caused to the plaintiff by falling objects as will later appear in our discussion of the facts of the case.

Following the statement just quoted, there appears under Section 220(2) what may be said to be a definition of the term "res ipsa loquitur". It is as follows:

"It is an established rule, known as the doctrine of res ipsa loquitur, that, where the thing which caused the injury complained of is shown to be under the management of defendant or his servants and the accident is such as in the ordinary course of things does not happen if those who have its management or control use proper care, it affords reasonable evidence, in the absence of explanation by defendant, that the accident arose from want of care."

In 38 Am.Jur., Negligence, § 299, it is stated that the doctrine "is based in part upon the theory that the defendant in charge of the instrumentality which causes the injury either knows the cause of the accident or has the best opportunity of ascertaining it, and that the plaintiff has no such knowledge, and therefore is compelled to allege negligence in general terms and rely upon the proof of the happening of the accident

in order to establish negligence. The inference which the doctrine permits is grounded upon the fact that the chief evidence of the true cause, whether culpable or innocent, is practically accessible to the defendant but inaccessible to the injured person. If the circumstances do not suggest or indicate superior knowledge or opportunity for explanation on the part of the party charged, or if the plaintiff himself has equal or superior means of information, the doctrine will not apply."

On this point concerning the superior knowledge of the defendant, 65 C.J.S., Negligence, at section 220(5) puts the matter in this language:

"It is generally held to be an essential element of the doctrine of res ipsa loquitur, and to constitute the reason or theory on which the doctrine is in part predicated, that, as the management and control of the agency which produced the injury is, under the circumstances to which the doctrine applies, exclusively vested in defendant, plaintiff is not in a position to show the particular circumstances which caused the offending instrumentality to operate to his injury, while defendant, being more favorably situated, possesses the superior knowledge or means of information as to the cause of the accident, and should, therefore, be required to produce the evidence in explanation. Accordingly if the circumstances do not suggest or indicate superior knowledge or opportunity for explanation on the part of the party charged or if plaintiff himself has equal or superior means of information, the doctrine cannot be invoked."

Without quoting further on the question of control of the instrumentality which produces the injury complained of it might be stated that American Jurisprudence, as shown at section 300 states the proposition in very much the same way.

▆ Under the facts as disclosed in this record we are concerned especially with those features of the doctrine as they relate (1) to the circumstances of the accident and whether they warrant an inference of negligence, (2) to the management and control of the instrumentality which caused the accident producing plaintiff's injury and (3) to the situation as it relates to the knowledge or information of either of the parties as to the cause of the accident. In other words, in order for the rule to apply, it must be shown that the circumstances attending the accident were such as to create an inference of negligence on the part of defendant's employee, that the control and management of the instrumentality was exclusively vested in the defendant and that plaintiff was not in a position to show the particular circumstances which caused the instrumentality to operate to his injury whereas the defendant, being in such a position, possessed superior knowledge or means of information as to the cause of the accident. This leads us now to a considera-

tion of the facts as developed by the testimony in the record.

The Alcoa Steamship Co. Inc., which, for the sake of brevity will hereafter be referred to simply as Alcoa, is engaged in the business of transporting cargoes of freight from the port of New Orleans to foreign ports. The cargoes are loaded aboard the steamers from the wharves along the Mississippi River which are under the dominion and control of the Board of Commissioners of the port of New Orleans. Spaces on the wharves are allotted to the steamship companies by the Board of Commissioners, that allotted to Alcoa being the Bienville Street Wharf.

According to the testimony of C. T. Bayard, Superintendent of Docks for the Board of Commissioners, in the case of Alcoa, that company is given what is called a preferential right or assignment on the Bienville Street Wharf which means that it does not have the exclusive right to the wharf but has the first call berth privilege. If Alcoa, for some reason, is not using the wharf for some two or three weeks, then the Board of Commissioners, with Alcoa's permission, could use the wharf to dock other steamers.

The loading of cargoes of freight aboard a ship seems to be a rather skillful operation inasmuch as all available space on the ship must be used for loading and storing the cargo aboard and, in lining up the freight on the wharf, incident to its being loaded on the steamer, it is placed in such a manner that the cubic contents of each separate cargo is measured and made known so that it will find its proper amount of space in the ship. The railroads have track facilities along the docks and freight which is received in railroad cars has to be transferred from the car and placed on the wharf in such position as to occupy, as near as possible the same cubic contents of space as it will occupy when placed aboard the steamer.

The unloading of the freight from the railroad cars and placing it on the wharf is not done by Alcoa but by T. Smith & Son, Inc., a stevedoring corporation, which hereafter will be referred to as Smith, under contract between them.

Alcoa has its receiving and checking clerks on the docks at the time this unloading takes place. The plaintiff was employed as such a clerk and it was his duty, on the day this accident occurred as well as at other times, to check the freight, see that it was placed in the designated position on the wharf and then to measure each package, bundle or bale as to height and width accordingly as it was placed on the wharf, and then to make a record of the weight and size of each.

The particular commodity which was being handled when the accident occurred was tin plate which was compressly packed into flat bundles or bales. Each bundle or package was flat and had a surface area of 4¼ feet being 18 inches wide and 30 inches long. The packages were tightly bound by metal straps and, crosswise under each,

there were three wooden skids each about 1½ inches wide and 4 inches high. These skids were fastened to wooden boards under the bales by nails, the purpose of the skids being to allow for the raising of each bundle about 4 inches from the floor so that each could be picked up by a lift machine which was used in moving the freight from the box car to the wharf and in raising them to the various heights necessary for stacking. This lift machine was the property of Smith and was operated by one of their employees. It is so constructed that its horizontal arms or lift forks are extended from its front and can be lowered to a few inches from the floor so that the machine itself which is built on a trolley and operated by motor power, can be brought alongside each bundle with the arms extended under the bundle and then the arms can be raised, the bundle moved and placed in its position on the wharf either upon the floor or stacked upon another bundle. It was the duty of the receiving clerk of Alcoa to check each bundle for damage and in case of any to take exception and, if necessary, to have them put aside.

On the day of the accident quite a number of these bales or bundles of tin plate had been unloaded from the box car and had been stacked in tiers on the wharf, three bundles high. They varied a little in thickness so that while the tiers were not exactly all the same height, each tier was about 3½ to 4 feet high. The same lift operator had been unloading and stacking bundles and had just completed the particular stack which collapsed. He had placed one bale weighing approximately 1800 pounds on the floor, had placed a second bale weighing approximately 1400 pounds on top of the first and had then placed a third bale weighing approximately 1800 pounds on top of the second. He then drove his lift operating machine from this last tier which he had stacked, toward the box car and the plaintiff, in the performance of his duty, had measured the third bundle and had turned around to record that measurement on a pad which he kept for his record. It was at that moment that the top bundle slipped toward the end where he was standing, causing two of the bundles to collapse and the top bundle to fall upon him. He suffered a serious compound fracture of the lower left leg and the resulting damage for which he instituted this suit.

The serious question presented and the one which controls the decision of this case on the application of the doctrine of res ipsa loquitur is, under whose management and control was the operation of stacking these bundles of tin plate, and whether either the plaintiff, employee of Alcoa, or the lift operator, employee of Smith, is in a better position or one has superior knowledge over the other as to the cause of the falling of these bales of tin plate and the resulting accident which caused the plaintiff to suffer the injury he complains of.

On this point we cannot determine that issue on the testimony of the plaintiff and

that of the lift operator because they directly contradict each other. The testimony of one neutralizes that of the other.

Looking to other testimony in the record and especially that offered by the plaintiff, in order to reach the proper solution of that important issue, we might refer first to the testimony of W. E. Eckenbrecht, the Terminal Superintendent of Alcoa. He testifies in a general way that plaintiff's duties were to receive this tin plate and place it on the wharf in a designated location but that he had no control over the stacking nor to see how it was stacked. He does state that, particularly, it is the duty of their clerk "to designate to their stevedores what cargo shall be loaded into the ship, and into what part of the ship, what compartment, and it is also his duty to follow up and see it has been loaded in that particular compartment from the spot where it was, into the ship and in other words that the operation has been accomplished." Later on he elaborates on this point a little and says that there are many things they expect their clerks to do in connection with receiving cargoes. We quote him further as stating: "It is very difficult to sit down and think of them all. A great many things can come up where we expect him to look for our interest. One of these things would be he would hold T. Smith & Son responsible for the proper placing of the cargo on the wharf, and if for some reason or other T. Smith & Son did not place it properly we would ultimately expect to receive a report from our clerk to that effect". When he is asked the following question: "Then as I understand your testimony the Alcoa Steamship Company clerk tells the T. Smith & Son cargo unloading foreman how high to stack the cargo before it is unloaded?", he answers: "That is correct." Finally he makes this pertinent and significant statement: "If for some reason or other it is not stacked properly and not high enough or perhaps too high, in that case we would expect our clerk to so inform the car unloading foreman and/or us, ourselves."

Harold J. Helmker, also employed by Alcoa as a clerk, in the same capacity as was the plaintiff, describes his duty in a general way and whilst he at first would seem to give the impression that the duty is simply to designate where the cargo must be unloaded, and not to designate the manner of piling, he does later on state that tin plate stacked three bundles high would not be safe and if he saw a lift operator stacking it three high he probably would tell him to make it a safer height. Asked a direct question if would allow it to be stacked three high he answers: "Myself, I would not".

Another witness for plaintiff, Guy Irwin, also a receiving clerk for Alcoa testifies generally to the same effect concerning his duties but when asked specifically, when the cargo is stacked, who tells the colored lift operator how high to put it he answers that if the cargo is one that they are not in the habit of handling, usually the track man

tells how high he wants it put out and when he is asked further: "You in turn tell the lift operator?" his answer is: "Yes". From his testimony we learn that as far as Alcoa is concerned tin plate is an unusual commodity as far as unloading it is concerned.

Under the facts as we analyze them it appears that the defendant's contract as stevedores for Alcoa obligated them to unload the freight from the railroad box cars and place it at some designated spot on the wharf. The duties of their employee in this connection were to take the particular package or bundle of freight from the car and by means of the lift machine convey it to that designated spot and after he had done so his duties with regard to that special bundle terminated. It can hardly be said therefore that the instrumentality in this case, which was the stack of tin plate bundles was, at the time of the accident, under the control and management of the defendant or of its servant. As already indicated, their employee had, on that morning, just prior to the accident, conveyed and stacked at least one row of bundles, containing, according to plaintiff's own testimony, approximately twenty-five or thirty bundles. That constituted ten tiers or stacks three bundles high, just like the last stack he had completed immediately preceding the accident. After he had completed this last stack he had time to maneuver his lifting machine and run it back to the box car before any of the packages fell from off the stack. There is no testimony to show what period of time

that took but, according to his own testimony, plaintiff himself had time to measure the last bundle, turn around to make a record of its measurements and that took about three-quarters of a minute.

We do not think that the circumstances of the accident are such as to warrant an inference of negligence on the part of defendant. In Morales v. Employers' Liability Assur. Corp., 202 La. 755, 12 So.2d 804, 808, it is stated:

"It is the duty of the plaintiff to prove negligence affirmatively; and while the inference allowed by the rule of res ipsa loquitur constitutes such proof, it is only where the circumstances leave no room for a different presumption that the rule applies. When it is shown that the accident might have happened as the result of one of two causes, the reason for the rule fails and it can not be invoked."

In the statement of the rule as we have heretofore quoted from parts of it, an essential element which imposes upon the defendant the duty or the burden of coming forward with evidence to explain how the accident happened arises from the fact that the agency which produced the injury is *exclusively* vested in him. Under the facts of this case it can hardly be contended that the agency was under the management and control, and much less the *exclusive* management and control of the defendant or its employee. But even if it could be said that he had some control over the manner

in which the bundles of tin plate were to be stacked the most that could be said in favor of the plaintiff would be that he had at least equal control in directing the manner of their stacking. In other words under a construction of the testimony the most favorable to the plaintiff it could only be said that there was a divided responsibility between them and under such a situation, the rule of res ipsa loquitur is not applicable. In the case of A. & J. Inc. v. Southern Cities Distributing Co., 173 La. 1051, 139 So. 477, 478, this Court made the following pertinent statement on that point: "The plaintiff, to some extent, relies upon the doctrine of res ipsa loquitur (the thing speaks for itself). This is a rule of evidence peculiar to the law of a limited class of negligence cases; but where, as stated, the defendant has no control over the premises, *or where there is a divided responsibility and the damage may have resulted from a cause over which the defendant had no control, all of the authorities hold, or at least the great weight of authority is, that the rule cannot be successfully invoked.*" (Emphasis supplied.)

Equally as effective against the plaintiff, in our opinion, is that other essential element of the rule which provides that when the circumstances surrounding the accident had not suggested or indicated superior knowledge or opportunity for explanation on the part of the party charged or, if plaintiff himself has equal or superior means of information, the doctrine cannot be invoked successfully by him. As we have shown before, in the process of stacking this last tier of packages, the plaintiff's duty was to be present and direct the manner in which the bundles should be stacked, at least how high they should be stacked. Assuming that he performed his duty in that respect and did not find it necessary to instruct the defendant's employee, it must have been because he was satisfied as to the manner in which, and the height to which, they had been stacked. It was after the lift operator had left the scene and, according to plaintiff's testimony, forty-five seconds after the last bundle had been placed on the stack that some of them fell. It cannot fairly be said then, that the circumstances indicated any superior knowledge or opportunity on the part of the defendant or of its employee for explanation as to the cause that made them fall. Plaintiff had equal means of information and therefore cannot successfully rest his demand on the doctrine of res ipsa loquitur which he now pleads.

We are of the opinion that the judgment of the Court of Appeal correctly decided the issue and properly reversed the judgment of the District Court.

For the reasons stated both writs granted herein are now recalled and the judgment of the Court of Appeal is affirmed.