JiCARAWAY, Judge.
Dorothy Fletcher filed suit against Dr. James Fenoli d/b/a Fenoli Health Clinic, Dr. Patrick Hayes, and their liability insurers for alleged chiropractic malpractice. Prior to trial, Dr. Fenoli and his liability insurer were dismissed from the suit. Following a bench trial, the court found in favor of Dr. Hayes holding that he had not acted in a negligent manner. Subsequently, the trial court granted plaintiffs motion for new trial to determine whether the application of the doctrine of res ipsa loquitur might change the initial verdict. After reconsideration, the trial court again rendered judgment in favor of Dr. Hayes.
Appellant, Dorothy Fletcher, raises two issues for our consideration. The first issue is whether the trial court erred in finding Dr. Hayes did not breach the requisite standard of care under a traditional negligence analysis. The second issue is whether the trial court erred in its application of the doctrine of res ipsa loquitur. In light of the contradictory evidence presented by the medical experts, we do not find that the trial court was manifestly erroneous in finding for Dr. Hayes. We affirm.

FACTS

Dorothy Fletcher, a 63-year-old homemaker, suffered a stroke in February 1984 that resulted in partial paralysis of her left shoulder and arm. On July 17, 1984, Mrs. Fletcher consulted Dr. Hayes, a doctor of chiropractic, who recorded her medical history and performed a physical exam, a neurological exam, and took x-rays of her spine. The x-rays revealed diffuse osteoporosis.
' [^According to Dr. Hayes, when Mrs. Fletcher returned to his office on July 18, 1984, he informed her of the chiropractic philosophy, discussed her osteopathic condition, and apprised her of the possibility of injury, including fractures. On July 20, Dr. Hayes treated Mrs. Fletcher with ultrasound, muscle stimulation, and passive range of motion procedures. On July 24, Dr. Hayes repeated the passive range of motion procedures, to which Mrs. Fletcher responded positively, and successfully performed a cervical spinal adjustment.
On July 25, Dr. Hayes performed the passive range of motion procedure again and attempted a thoracic spinal adjustment. He testified the success of the non-manipulative therapy and the cervical adjustment indicated the thoracic adjustment was appropriate. In this procedure, the patient lies face up on a table with arms crossed, left hand resting *1050 on right shoulder and right hand resting on left shoulder. The chiropractic physician helps the patient roll onto their side, places his “contact” hand underneath the patient’s spine, and then rolls the patient back onto their back. The chiropractor then attempts to manipulate the spine with the “contact” hand while pushing against the patient’s crossed arms. When Dr. Hayes attempted this adjustment, he heard a pop and Mrs. Fletcher indicated she had been injured. Lester Fletcher, plaintiffs husband, was also present at the time of the accident. The x~ rays taken by Dr. Hayes revealed an avulsive fracture of the.humerus (the long bone in the arm extending from the shoulder to the elbow). Dr. Hayes informed Mrs. Fletcher of the fracture, immobilized her arm in a sling, packed it with ice, and asked if she wanted to see a medical doctor. |3Pr. Hayes also called a physician and requested a pain medication prescription for Mrs. Fletcher.
A few days following the accident, Mrs. Fletcher went to Lincoln General Hospital in Ruston where additional x-rays confirmed the fractured humerus. Mrs. Fletcher returned to Dr. Hayes for treatment on four occasions after the July 25 accident. Dr. Hayes treated her with ultra sound, muscle stimulation, and performed additional cervical spinal manipulations.
After interviewing Mrs. Fletcher and reviewing her medical records, Dr. Daniel Alan Langley, doctor of chiropractic, expressed the opinion that Dr. Hayes should have x-rayed her shoulder before attempting the thoracic spinal adjustment. He admitted, however, that his opinion was based only upon the x-rays taken in his office without consideration of those taken by Dr. Hayes of the patient’s spine. Dr. Langley stated Mrs. Fletcher’s age, her diagnosed osteoporosis, and her partially paralyzed shoulder and arm should have alerted Dr. Hayes to the necessity for x-rays and the use of extreme care. Dr. Langley was of the opinion that chiropractic adjustments could be performed on Mrs. Fletcher but only with extreme care. Dr. Langley also criticized Dr. Hayes for not performing two particular diagnostic tests and opined that Dr. Hayes’ treatment fell below acceptable standards of care for the chiropractic community.
Dr. Charles Herring, another doctor of chiropractic, reviewed Dr. Langley’s deposition, Mrs. Fletcher’s medical records, and the x-rays taken at the Fenoli Clinic. Dr. Herring testified that because Dr. Hayes was not adjusting or manipulating Mrs. Fletcher’s shoulder it was not necessary to xjrayt her shoulder. Dr. Herring emphasized the fact that Dr. Hayes began treating Mrs. Fletcher with conservative, non-manipulative treatments and performed his first adjustment only after she responded positively to the non-manipulative therapy. Indeed, only after Dr. Hayes successfully adjusted the cervical spine did he attempt the thoracic spinal adjustment. Dr. Herring testified that Dr. Hayes’ progressive treatment, non-manipulative therapy followed by the successful cervical spinal adjustment, and finally thoracic spinal adjustment, indicated he was using extreme care in his treatment of Mrs. Fletcher. Dr. Herring was not aware of any reported fractures of the humerus as a result of a thoracic spinal adjustment; however, he testified fractures of the spine and ribs were reported. Contrary to Dr. Langley’s testimony, Dr. Herring stated the tests that Dr. Hayes did not perform were either contraindicated for stroke victims or were not pertinent to Mrs. Fletcher’s condition. The trial court in its original written reasons for judgment stated:
Although somewhat perplexed as to how such fracture could occur I am not convinced from the evidence presented that the actions of the defendant amounted to'a deviation below the standard of care required of him. The only evidence offered by the petitioner to meet the burden of proof necessary is the deposition of Dr. Langley. I am not impressed with his review or the bases of his opinion. Conversely, I am impressed with the testimony and opinion of Dr. Herring noting his careful review of the information available to him and the manner in which he testified.
Even after applying the doctrine of res ipsa loquitur, the district judge reached the same result.

*1051
J£AW

Standard of Review

Initially, we note a court of appeal may not set aside a trial court’s finding of fact in the absence of manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact-finder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Stobart v. State, DOTD, 617 So.2d 880 (La.1993). In the absence of manifest error, the court of appeal may not reverse the trial court’s factual findings, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Housley v. Cerise, 579 So.2d 973 (La.1991). Contrary to appellant’s assertion, regarding the doctrine of res ipsa loquitur, the determination of whether the plaintiff has met the burden of proof in a chiropractic malpractice case is a factual inquiry. McCurdy v. Ault, 94-1449 (La.App. 1st Cir. 04/07/95), 654 So.2d 716.

Standard of Care

Prior to the enactment of Chapter 36 of the Revised Statutes in 1974, the practice of Chiropractic constituted the practice of medicine and, as such, was subject to statutory regulation under Chapter 15, regulating physicians, surgeons, midwives, and osteopaths. See Louisiana State Bd. of Medical Examiners v. Mooring, 86 So.2d 641 (La.App. 2d Cir.1956). See also eases cited in Annotation, Scope of Practice of Chiropractic, (Thomas R. Trenkner et al, eds.) 16 A.L.R.4th 58, 67 (1982). Currently, chiropractic is a 16state regulated medical specialty that diagnoses conditions associated with the functional integrity of the spine and treats such diseases by adjustment, manipulation, therapeutic exercises, mobilization and the use of heat, light, water, electricity, sound, and massage. LSA-R.S. 37:2801(3).
By Act 709 of 1985 the legislature amended and reenacted R.S. 9:2794 specifically to include “chiropractic physicians.” The standard of care applied to chiropractors is the same as that applied to physicians. Boudreaux v. Panger, 490 So.2d 1083 (La.1986). La.R.S. 9:2794 provides in pertinent part:
In a malpractice action based on the negligence of a chiropractic physician licensed under R.S. 37:2801 et seq., the plaintiff shall have the burden of proving:
(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances.
(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.
(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
The Louisiana Supreme Court has held Act 709, and its amendment including chiropractors, is entitled to retrospective effect. Boudreaux v. Panger, at 1085. Accordingly, we will be guided by the standard of care enunciated in Act 709 in reviewing this case even though Mrs. Fletcher’s accident occurred shortly before passage of the act.
Although Mrs. Fletcher described the thoracic spinal adjustment, neither she nor her husband testified that Dr. Hayes used prolonged or excessive force. Indeed, Mrs. Fletcher returned to Dr. Hayes for additional ^cervical adjustments following the accident. Dr. Hayes, on the other hand, testified he was aware of Mrs. Fletcher’s diffuse osteoporosis and used extreme care in performing the adjustment. The plaintiffs expert, Dr. Langley, could not state that Mrs. Fletcher was not a candidate for chiropractic treatment and the adjustment she received. Therefore, the trial court accepted the fracture which occurred in this instance as a remote risk attendant to the adjustive proce-. dure which did not result from. Dr. Langley’s negligence. Compare, Morgan v. Willis-Knighton Medical Center, 456 So.2d 650 (La.App. 2d Cir.1984).
*1052 In reviewing the testimony of the experts, the function of the appellate court is to determine only whether there is sufficient evidence before the trier of fact to furnish a reasonable basis for its findings. We will not disturb those findings in the absence of clear error, even if other conclusions from the same evidence are equally reasonable. Reid v. North Caddo Memorial Hosp., 528 So.2d 653 (La.App. 2d Cir.1988). Accordingly, on this record, we must conclude the trial court was not manifestly erroneous in accepting Dr. Herring’s opinion that Dr. Hayes did not breach the standard of care.

Res Ipsa Loquitur

After granting plaintiffs motion for new trial in order to reconsider the evidence in light of the doctrine of res ipsa loquitur, the trial court found that Dr. Hayes did not breach the standard of care and dismissed the suit. On appeal, Mrs. Fletcher asserts the trial court incorrectly applied the doctrine of res ipsa loquitur. Res ipsa loquitur is a rule of circumstantial evidence which allows a court to infer negligence on the part of the defendant if the facts vindicate the defendant’s negligence, more probably than not, caused the injury. The doctrine does not apply if there is sufficient direct evidence explaining the occurrence and establishing the details of the defendant’s actions. Walker v. Union Oil Mill, Inc., 369 So.2d 1043 (La.1979). The mere invocation of res ipsa loquitur does not result in an automatic finding of liability. The defendant’s explanation of the accident may sufficiently rebut any inference of negligence. Spott v. Otis Elevator Co., 601 So.2d 1355 (La.1992).
In this case, the actions of defendant were established by direct evidence. The testimony of Dr. Hayes and the reactions of the plaintiff and her husband at the time of the accident and thereafter provided the trial court with evidence to determine whether the degree of physical pressure exerted by Dr. Hayes at the moment of the fracture was excessive. Moreover, the expert testimony confirmed that a fracture is an injury which can result in the absence of negligence.
Assuming the appellant’s argument is correct and the doctrine of res ipsa loquitur is applicable, we hold the trial court did not err in finding the defendant sufficiently rebutted the inference of negligence. Dr. Herring testified that Dr. Hayes did not breach the standard of care and specifically explained the appropriateness of each step in the treatment of Mrs. Fletcher. The criticisms leveled at Dr. Hayes by Dr. Langley were sufficiently refuted by defendant and his expert.
| ¡DECREE
The fractured humerus suffered by Mrs. Fletcher was an unfortunate accident; however, the trial court’s conclusion that the fracture was not due to the fault of Dr. Hayes is not clearly wrong. Accordingly, and for the reasons assigned, the judgment of the trial c'ourt is affirmed. Appellate costs are assessed against appellant, Mrs. Fletcher.
AFFIRMED.