680 So.2d 1352 (1996)
Martha A. SHAHINE, Plaintiff-Appellant,
v.
LOUISIANA STATE UNIVERSITY MEDICAL CENTER IN SHREVEPORT, et al., Defendant-Appellee.
No. 28691-CA.
Court of Appeal of Louisiana, Second Circuit.
September 27, 1996.
*1353 James D. Caldwell, for Plaintiff-Appellant.
Booth, Lockard, Politz, Lesage & D'Anna by Bennett L. Politz, Shreveport, for Defendant-Appellee.
Before BROWN, STEWART and CARAWAY, JJ.
CARAWAY, Judge.
Plaintiff, Martha A. Shahine, appeals a judgment from the trial court dismissing her medical malpractice claim against Cleveland Waterman, M.D., an anesthesiologist, and the Louisiana State University Medical Center in Shreveport. Ms. Shahine suffered permanently debilitating ulnar nerve damage in her right arm following surgery for hip replacement. For the reasons stated herein, we affirm.

Facts and procedural background
Martha Shahine, age 47, was admitted to LSU Medical Center on September 20, 1990 for right total hip arthroplasty surgery on September 21 and left total hip arthroplasty surgery on September 27. It was documented that following the September 21 surgery, the plaintiff complained of numbness in her right hand that was not present before the *1354 operation. The numbness in her hand persisted. A neurological examination was conducted by Dr. Paul D. Ware on July 29,1991. His impression was that Ms. Shahine suffered nerve damage to the ulnar nerve of the right arm, probably secondary to pressure damage. Plaintiff contends that during the first surgery on September 21, 1990, she suffered permanent damage to the ulnar nerve in her right arm while she was under anesthesia.
The matter was presented to a Medical Review Panel pursuant to LSA-R.S. 40:1299.39 et seq., composed of Dr. Wade Allain, Dr. Robert E. Haley and Dr. Felix K. Prakasam. The panel rendered its opinion on May 7, 1992, and unanimously held that the evidence did not support the conclusion that the defendants failed to meet the applicable standard of care as charged in the complaint.
Plaintiff subsequently filed suit on June 23, 1992 naming as defendants, Louisiana State University Medical Center in Shreveport ("LSUMC") and Dr. Waterman, who cared for Ms. Shahine during the September 21, 1990 surgery. The Board of Supervisors of Louisiana State University Agricultural and Mechanical College ("Board") answered the plaintiff's petition for LSUMC as the proper party defendant.
Following a two-day bench trial, the trial judge rendered judgment and the reasons thereof from the bench on August 25, 1995. He found that the plaintiff could not prevail even when given the inference of negligence raised by the application of the doctrine of res ipsa loquitur, because the contemporaneously documented medical record showed that the defendant and medical staff had taken every precaution to prevent the injury sustained by the plaintiff. Additionally, the record supported the conclusion that this particular type of injury is not unheard of as a complication from surgery in patients such as the plaintiff who may be unsymptomatically predisposed to it, even where proper precautions and procedures are followed.
In the recent case, Robertson v. Hospital Corp. of America, 26,694 (La.App. 2d Cir. 4/5/95), 653 So.2d 1265, we discussed at length the nature of the injury to the ulnar nerve which can occur to the anesthetized patient during surgery. While we will discuss this prior ruling below, we note that the expert testimony in this case similarly described the risk in much the same detail as set forth in Robertson.
Plaintiff now appeals alleging two assignments of error, which summarized, state that the trial court erred in failing to apply the doctrine of res ipsa loquitur in finding that the plaintiff did not establish that the defendants breached the standard of care in light of the "uncontradicted" and "greatly preponderant objectively-corroborated" testimony.

Applicable law for medical malpractice
The plaintiff's burden of proof in a medical malpractice action against a physician is found in La. R.S. 9:2794(A), which provides:
`A. In a malpractice action based on the negligence of a physician licensed under R.S. 37:1261 et seq., a dentist licensed under R.S. 37:751 et seq., an optometrist licensed under R.S. 37:1041 et seq., or a chiropractic physician licensed under R.S. 37:2801 et seq., the plaintiff shall have the burden of proving:
(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, dentists, optometrists, or chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians, dentists, or chiropractic physicians within the involved medical specialty.
(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.
(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff *1355 suffered injuries that would not otherwise have been incurred."
In Martin v. East Jefferson General Hospital, 582 So.2d 1272, 1276 (La.1991), the Supreme Court outlined the burden of proof and appellate standard of review in such cases as follows:
"In a medical malpractice action against a physician, the plaintiff carries a two-fold burden of proof. The plaintiff must first establish by a preponderance of the evidence that the doctor's treatment fell below the ordinary standard of care expected of physicians in his medical specialty, and must then establish a causal relationship between the alleged negligent treatment and the injury sustained. LSA-R.S. 9:2794; Smith v. State through DHHR, 523 So.2d 815, 819 (La.1988); Hastings v. Baton Rouge General Hospital, 498 So.2d 713, 723 (La.1986). Resolution of each of these inquires are determinations of fact which should not be reversed on appeal absent manifest error. Housley v. Cerise, 579 So.2d 973 (La.1991); Smith, 523 So.2d at 822; Rosell v. ESCO, 549 So.2d 840 (La.1989); Hastings, 498 So.2d at 720."
"[I]f the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). "We have instructed the appellate courts that where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." Rosell v. ESCO, 549 So.2d at 844; Housley, supra.

When the expert opinions contradict concerning compliance with the applicable standard of care, the trial court's conclusions on this issue will be granted great deference. It is the sole province of the factfinder to evaluate the credibility of such experts and their testimony. Arceneaux, supra; Broadway, supra.

Discussion
In this case, plaintiff relies on our decision in Morgan v. Willis-Knighton Medical Center, 456 So.2d 650 (La.App. 2d Cir.1984), to argue that the doctrine of res ipsa loquitur applies, and that the trial court erroneously failed to apply the doctrine. Morgan is similar to the instant case in that the plaintiff in that case suffered ulnar nerve damage while under anesthesia during bladder surgery. We stated in Morgan that "because plaintiff was anesthetized and unconscious at the time of his injuries, he was therefore compelled, in asserting his claims, to rely on the tort doctrine of res ipsa loquitur." Morgan, supra at 655. We affirmed the trial court's determination under the doctrine of res ipsa loquitur that the defendant was liable to the plaintiff for the ulnar nerve damage.
Res ipsa loquitur is not a substantive legal tenet, but rather an evidentiary doctrine under which a tort claim may be proved by circumstantial evidence. Smith v. International Paper Co., 299 So.2d 437 (La. App. 2d Cir.1974), writ denied, 302 So.2d 310 (La.1974). As stated in Morgan, supra, the following three elements must be present for the doctrine of res ipsa loquitur to apply: (1) the defendant has actual control of the agency, instrumentality or conditions which caused plaintiff's injuries; (2) the evidence as to the true cause of plaintiff's loss is more readily accessible to defendant than plaintiff; and (3) the accident is of a kind that does not occur in the absence of negligence and/or the circumstances attending the accident create an inference of negligence on the part of defendant. Morgan, supra; Langlinais v. Geophysical Service, Inc., 237 La. 585, 111 So.2d 781 (1959); Northwestern Mutual Fire Ass'n v. Allain, 226 La. 788, 77 So.2d 395 (1954); Dorman v. T. Smith & Son, 223 La. 29, 64 So.2d 833 (1953); Ray v. Ameri-Care Hospital, 400 So.2d 1127 (La.App. 1st Cir. 1981), writ denied, 404 So.2d 277 (La.1981). (Emphasis supplied). Thus, the defendant's negligence is inferred under the principle of res ipsa loquitur because, under the facts shown, the inference that defendant's negligence caused plaintiff's harm is probable and more plausible than any other explanation propounded. See Boudreaux v. American *1356 Ins. Co., 262 La. 721, 264 So.2d 621 (1972). It is crucial to note that, where the doctrine of res ipsa loquitur is properly applicable, the plaintiff need not establish the exact manner in which he was injured, or the precise act or event which precipitated his injury. Boudreaux, supra.
The inference afforded to the plaintiff under the doctrine of res ipsa loquitur does not prevail, however, if there is sufficient direct evidence explaining the occurrence and establishing the details of the defendant's actions. Fletcher v. Fenoli, 674 So.2d 1048 (La.App. 2d Cir.1996). Similarly, we stated in Morgan that a "plaintiff may not avail himself of the res ipsa loquitur doctrine where the hypothesis that plaintiff's injuries were not caused by defendant's negligence is equally plausible as the postulate that plaintiff's injuries were caused by defendant's negligence." Morgan, supra at 656.
The first two elements needed to apply the doctrine of res ipsa loquitur are clearly present in this instance. The defendant's personnel had actual control of the instrumentalities, conditions and circumstances which caused plaintiff's injuries. As the anesthesiologist, Dr. Waterman was responsible for the protection and care of that patient and had an obligation to protect the patient during the course of the anesthetic against all incidents which might occur during that time. Ms. Shahine was anesthetized and therefore unable to feel pain or control and direct her own movements or actions, or to protect herself. The anesthetist and the surgical staff possessed sole control over the movement, positioning and protection of the plaintiff while under the anesthetic.
The second element is also present because the evidence as to the true cause of plaintiff's injury is more readily accessible to defendant than plaintiff for the obvious reason that plaintiff was anesthetized and unconscious while the events which precipitated this injury transpired. See Morgan, supra.
The third element, upon which we believe the trial court correctly focused, is not clearly present in this case. Unlike the defendants in Morgan, the defendants in the instant case presented evidence in the form of the contemporaneously documented nurse's notes of the procedures followed regarding the placement and padding of the arm to protect against ulnar nerve injury. The defendants also presented documented evidence in the form of two medical journal articles published in 1992 and 1994, long after the Morgan decision, reporting the results of studies that indicate that ulnar neuropathy is associated with factors other than anesthesia and intraoperative positioning. In other words, the studies showed that other factors predispose certain patients to ulnar nerve injury even where the standard of care is not violated. The defendants argued that Ms. Shahine possessed two of these factors, including the factor of being extremely thin, and the trial court's ruling indicates that it believed the plaintiff was predisposed to the injury. Thus, the defendants presented a plausible explanation for Ms. Shahine's ulnar nerve damage that was not a result of the defendants' negligence. Hence, the third factor, which was present in Morgan, is not present in this case.
We conclude, therefore, that plaintiff's argument regarding the trial court's misapplication of the doctrine of res ipsa loquitur is without merit. The opinion of the trial court indicates, however, that the court considered the plaintiff's case in light of the doctrine of res ipsa loquitur, but was swayed more by the evidence presented by the defense discussed in more detail below. The doctrine is not a substantive doctrine imposing undisputable liability. This principle merely modifies the process of proof placing upon the defendant the burden of going forward with proof to nullify the inference gained by the plaintiff. This inference must be weighed, however, with all other proof in determining whether the plaintiff has satisfied the required evidentiary burden of a preponderance of the evidence. Morgan, supra; Boudreaux, supra; Larkin v. State Farm Mutual Automobile Ins. Co., 233 La. 544, 97 So.2d 389 (1957); Alexander v. St. Paul Fire & Marine Ins. Co., 312 So.2d 139 (La.App. 1st Cir. 1975), writ denied, 313 So.2d 846 (La.1975).
Though the plaintiff did not cite and argue our ruling in Robertson v. Hospital Corp. of America, supra, a decision in which the jury *1357 found the anesthesiologist negligent even though there was no jury instruction on res ipsa loquitur, we believe that the factual similarity between the cases requires our discussion. In Robertson, as in this case, the defendants argued that the standard of care was shown to be met because of the testimony of the medical personnel regarding the critical positioning and padding of the patient's arm and elbow during the surgery. Nevertheless, two critical aspects of the positioning of the patient's arm were called into question by the plaintiff's experts regarding the exact angle of the arm and the use of velcro arm straps to securely hold the arm in place. Though these two factors are not relevant in this case due to the different positioning of the plaintiff's body for her hip surgery, the fact that the medical records prepared during the surgery in Robertson failed to record the angle of the patient's arm and the use of the arm straps facilitated a factual dispute concerning those two vital aspects of the applicable standard of care for that operation. The jury therefore, had a basis for its finding of negligence because of this fact dispute.
In this case, the contemporaneous medical record of the positioning of the plaintiff prepared by the circulating nurse showed that the plaintiff was placed on her left side during the surgery with her left and right arms outward from her body and away from the area required for the surgeon to perform his work. The record read as follows:
"# 6 table with safety strap in place 2" above knees____supine with bean bag underneath patient post induction & catheter insertion into the left side, with right side up, per Bronson MD, & Webb MD, ____ auxiliary roll in place____(1000cc bag IV fluid wrapped in muslin cover)____held in place per surgeons until bean bag deflated with suction____pillow placed under right leg with left leg bent slightly____U Drape in place per surgeons pre prep____left arm extended on padded arm board____ right arm placed on mayo tray that is padded."
The defendants' experts' medical testimony reviewing this record of the position of the patient unanimously concluded that the proper standard of care for the stabilizing of the plaintiff's body on the table and the cushioning of her right arm was met. The defense presented no expert testimony from an anesthesiologist to question this medical record and expert testimony.
Additionally, the expert medical testimony in Robertson was in conflict over whether certain anatomical, medical or occupational factors could cause a patient to be predisposed to an ulnar nerve injury so that injury to the nerve may occur during surgery absent any malpractice. In this case, the defense presented uncontroverted expert testimony on a Mayo Clinic study regarding ulnar neuropathies and general anesthesia. Dr. Robert Haley, an expert in anesthesiology, testified that the study showed that certain factors other than anesthesia and intraoperative positioning played a role in the susceptibility to ulnar neuropathy. These factors were gender, weight and the length of the hospital stay. Plaintiff possessed two of the three factors found, namely, she was very thin and the length of her hospital stay was greater than 14 days. Dr. Haley thus concluded that in some cases a patient will develop ulnar neuropathy even when properly padded.
At the conclusion in Robertson, we stated that while the trier of fact was "effectively told [by the defense] ... that the standard of care was met in all respects and that Robertson was, more probably than not, predisposed to an ulnar nerve injury from the normal events of surgery," the jury chose the plaintiff's view of that same evidence and the plaintiff prevailed. As shown above, the defense in this case, though very similar to the Robertson defense, was stronger, particularly as to the positioning of the patient during surgery as reflected by the undisputed contemporaneous medical record. We therefore conclude by repeating the above statement of the law regarding appellate review. Even though we might differ in our conclusions, when a judgment is reasonably supported by the record, it cannot be clearly wrong, and a reversal of the trial court's fact rulings in this case is inappropriate.

*1358 Conclusion

For these reasons, the judgment of the trial court is affirmed at appellant's costs.
AFFIRMED.