702 So.2d 57 (1997)
Ruth E. ELKINS, Plaintiff-Appellant,
v.
Gary S. KEY, D.D.S., and Medical Protective Company, Defendants-Appellees.
No. 29977-CA.
Court of Appeal of Louisiana, Second Circuit.
October 29, 1997.
*58 Booth, Lockard, Politz, LeSage & D'Anna, L.L.C. by Joe. C. LeSage, Jr., Shreveport, for Appellant.
Rountree, Cox, Guin & Achee by Gordon E. Rountree, Shreveport, for Appellees.
Before NORRIS, CARAWAY and PEATROSS, JJ.
PEATROSS, Judge.
In this medical malpractice action, Ruth E. Elkins ("Mrs.Elkins") appeals an adverse judgment in which the trial court found in favor of defendant, Dr. Gary Key ("Dr.Key"), and dismissed with prejudice Mrs. Elkins' suit. In his written ruling, the trial judge found that Mrs. Elkins had not proven her malpractice case by a preponderance of the evidence and that Dr. Key met the standard of care in performing Mrs. Elkins' periodontal surgery and the extraction of two of her third molars. Mrs. Elkins argues that the trial court erred: (1) in finding that she gave her informed consent to the surgery and, alternatively, that her informed consent could legally be implied by application of the "reasonable, objective person test;" (2) in concluding that there is no expert testimony showing that Key violated LSA-R.S. 9:2794; and (3) in concluding that the doctrine of res ipsa loquitur did not apply to the facts presented in this case.

FACTS
In August 1990, Mrs. Elkins' orthodontist referred her to Dr. Key for possible periodontal surgery. Dr. Key's initial examination revealed, among other findings, that Mrs. Elkins had an impacted third molar, or wisdom tooth, on the lower right side of her mouth. He determined that this third molar should be removed in order to gain access to a pocket formation on the distal portion of the second molar. Dr. Key informed Mrs. Elkins that periodontal surgery was indicated and that he believed this third molar and another wisdom tooth should be removed. Dr. Key offered to remove the wisdom teeth during the periodontal surgery at no extra cost to Mrs. Elkins. The surgery was scheduled for October 24, 1990. Prior to the surgery, Mrs. Elkins' employment required her to be out of town. Dr. Key's office contacted Mrs. Elkins' husband, who came to the office and signed one document which detailed the risks of the surgery and provided the patient's consent and another document *59 which listed instructions for Mrs. Elkins prior to and after the surgery.
The surgery was completed as scheduled and the third molar was removed. After the surgery, Mrs. Elkins experienced profuse bleeding and swelling which eventually subsided. In addition, Mrs. Elkins realized that she had no feeling on the right side of her tongue, her gums and teeth on the lower right side and the exterior of her face from the center of her lower lip and chin around the right side to below her ear. This condition, known as paresthesia, is caused by damage to the lingual and inferior alveolar nerves. The paresthesia was still present at the time of trial, unabated in the tongue, but slightly abated in the other areas. Mrs. Elkins also experiences a partial loss of taste and an unpleasant bitter taste on the right side of her tongue.
Mrs. Elkins requested a medical review panel which subsequently rendered an opinion concluding that the evidence did not show that Dr. Key failed to meet the standard of care. The review panel found that the decision to extract the tooth was appropriate, that a reasonable person would consent to the extraction procedure under the circumstances in this case and that the fact of nerve involvement occurring is not indicative of malpractice.
After a bench trial, the trial judge entered judgment in favor of Dr. Key. In his ruling, the trial judge concluded that Dr. Key did not inform Mrs. Elkins of the risk of nerve damage or suggest that she consult with an oral surgeon; that Mrs. Elkins' husband hurriedly signed a consent form advising of potential risks and complications associated with periodontal surgery; that because Mrs. Elkins was not "reasonably available" prior to surgery, written consent in accordance with LSA-R.S. 40:1299.53 A(4) was obtained; that Mrs. Elkins would have undergone the procedure had she read and signed a consent form because the risk of paresthesia was remote and she was able to have the procedure done in one surgery for one cost and with one recovery period; that there was no violation of the standard of care and no expert testimony as to such violation; and that the doctrine of res ipsa loquitur was not applicable in this case.

DISCUSSION

Informed Consent
Mrs. Elkins argues that she never gave her informed consent to the removal of the third molar. She contends that the risks involved with this procedure were never explained to her and that she was never given the option of consulting with an oral surgeon for the removal of her wisdom teeth. In addition, Mrs. Elkins claims that implied consent is not present in this case because a reasonable person, fully informed of the risks, would not have consented to the procedure at all, or would at least have sought the advice of an oral surgeon.
Dr. Key argues that he obtained Mrs. Elkins' informed consent when her husband signed the consent forms. Dr. Key claims that the Louisiana Medical Consent Law, LSA-R.S. 40:1299.53, allows the patient's spouse to sign the consent form when the patient is not "reasonably available." Dr. Key contends that even if Mrs. Elkins' informed consent was not obtained, implied consent is present in this case. He alleges that, even had the remote risk of paresthesia been explained, a reasonable person would have consented to the removal of the third molar during the periodontal surgery because such consent would result in only one surgery, recovery and charge.
In his written ruling, the trial judge concluded that Dr. Key did not discuss the risk of nerve damage or paresthesia with Mrs. Elkins on her first visit to his office. The trial judge found that Mrs. Elkins was not "reasonably available" due to her business trip prior to surgery, and since Mr. Elkins signed the consent form, informed consent to the procedure in accordance with LSA-R.S. 40:1299.53[1] was obtained. In addition, *60 the trial judge determined that, in accordance with the "reasonable, objective person test," Mrs. Elkins would have undergone the procedure had she read and signed the consent form because the risk of paresthesia was remote and she was able to avoid the additional pain, discomfort, inconvenience, costs and recovery period that would have been involved had an oral surgeon removed the third molar.
Generally, where the circumstances permit, the patient should be told the nature of the pertinent ailment or condition, the general nature of the proposed treatment or procedure, the risks involved therein, the prospects of success, the risks of failing to undergo any treatment or procedure at all and the risks of any alternate methods of treatment. Yuska v. HCA Health Services of Louisiana, Inc., 28,878 (La.App.2d Cir. 12/11/96), 684 So.2d 1093; Roberts v. Cox, 28,094 (La.App.2d Cir. 2/28/96), 669 So.2d 633.
LSA-R.S. 40:1299.131, dealing with consent to dental treatment, states in pertinent part:
* * * * * *
B. Notwithstanding any other law to the contrary, "informed consent" means consent to any dental treatment or course of dental treatment given by a patient:
(1) After the patient has been informed in general terms of the nature and purpose of the dental treatment or course of dental treatment and those risks of death, brain damage, quadriplegia, paraplegia, the loss or loss of function of an organ or limb, or disfiguring scars, if any, associated with such dental treatment which would ordinarily have been disclosed under the same or similar circumstances by dentists with the same or similar training; and
(2) After the patient has been given an opportunity to ask questions concerning such dental treatment or course of dental treatment and his questions, if any, have been answered in a satisfactory manner.
* * * * * *
E. In any action for damages in which it is alleged that a patient underwent a dental treatment or course of dental treatment without his informed consent, the plaintiff shall have the burden of proving, by a preponderance of the evidence, that:
(1) The defendant dentist failed to disclose a risk of death, brain damage, quadriplegia, paraplegia, the loss or loss of function of an organ or limb, or disfiguring scars associated with such dental treatment or course of dental treatment which would ordinarily have been disclosed under the same or similar circumstances by dentists with the same or similar training experience;
(2) Such undisclosed risk did occur; and
(3) A reasonably prudent person in the patient's position would not have undergone the dental treatment or course of dental treatment had he been properly informed.
In determining whether a reasonable prudent person in the patient's position would have consented to the procedure had the material information and risks been disclosed, the Louisiana Supreme Court has established an objective standard to negate the likelihood of a patient's bias in testifying in hindsight on this matter. Hondroulis v. Schuhmacher, 553 So.2d 398 (1988).
In the present case, Dr. Joseph Cush, an oral surgeon practicing in Shreveport, testified by deposition that the risk of paresthesia resulting from the removal of a tooth similar to that of Mrs. Elkins is very low. He also stated that the risk of paresthesia resulting from the removal of a lower right third molar by an oral surgeon would be about one to two percent. In addition, Dr. David Wofford, a Dallas physician Mrs. Elkins consulted about correcting her *61 paresthesia, in an article he co-authored and which was introduced at trial, found a 3.3% risk of paresthesia relative to the removal of impacted third molars.
Dr. Chris Gardner, a periodontist practicing in Shreveport, testified that in this situation, the removal of the third molar was beneficial to the patient. He noted that Mrs. Elkins was experiencing early bone loss behind the second molar and that removal of the third molar would make the pocket area more stable. He also stated that removal of a tooth similar to that of Mrs. Elkins during the periodontal surgery is easier on the patient because it prevents a second surgery.
Dr. Tom McNeely, a Shreveport periodontist, testified that removal of the wisdom teeth by the periodontist minimizes the surgeries and expense for the patient. He stated that having the third molar removed gives better access to the second molar; and, thus, the tissue may be positioned more carefully on the second molar resulting in a better closure. Dr. McNeely also testified that in his practice, when he explains the extraction procedure for wisdom teeth and the necessity of removal for the periodontal surgery, his patients generally agree that he should remove the wisdom teeth. In addition, Dr. McNeely said that the risk of paresthesia for wisdom teeth extraction is fairly rare.
Dr. Thomas Borders, who practices periodontics and general dentistry in the Shreveport area, testified that he has never had a patient refuse surgery due to the risk factors, including a slight risk of numbness, after being told that the result would be better if the wisdom tooth was removed. Dr. Borders also testified that he gives his patients the option to visit an oral surgeon for removal of the wisdom tooth, but did not recall ever having a patient opt to go to an oral surgeon.
After reviewing the above discussed information, we agree with the trial court's conclusion that "... in accordance with the `reasonable, objective person test' ... Mrs. Elkins would have undergone the procedure had she read and signed the consent form." Since we find that a reasonable person in Mrs. Elkins' position would have consented to and undergone the removal of the third molar had she been properly informed, we pretermit a discussion regarding written consent under LSA-R.S. 40:1299.53.

Standard of Care
Mrs. Elkins argues that the trial court erred in concluding that there was no expert testimony that Dr. Key breached the standard of care in his extraction of the wisdom tooth and in his failure to inform Mrs. Elkins of the risk of nerve damage and the option of consulting an oral surgeon. She contends that the testimony of Dr. Cush and Dr. Gardner details Dr. Key's negligent conduct in removing her third molar. She also argues that all three periodontists testified that they would have warned Mrs. Elkins of the risk of nerve damage and would have suggested consultation with an oral surgeon.
Dr. Key contends that he met the standard of care with this patient and Mrs. Elkins did not produce any evidence to the contrary. Dr. Key points to the opinion of the medical review panel and the testimony of Drs. Borders and McNeely which, according to Dr. Key, conclude that he met the standard of care. Dr. Key also argues that the evidence shows that periodontists are qualified to extract wisdom teeth and do so in the regular course of their practice.
The trial judge concluded in his written ruling that there was no violation of the standard of care. He also found that no expert testimony was presented by Mrs. Elkins to show that Dr. Key violated the three elements of LSA-R.S. 9:2794.
LSA-R.S. 9:2794 establishes the plaintiff's burden of proof in a medical malpractice action and states in pertinent part:
A. In a malpractice action based on the negligence of a ... dentist licensed under R.S. 37:751 et seq.... the plaintiff shall have the burden of proving:
(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by ... dentists ... licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar *62 to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by ... dentists ... within the involved medical specialty.
(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.
(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
A physician is not held to a standard of absolute precision. Rather, his conduct and judgment are evaluated in terms of reasonableness under then-existing circumstances, not on the basis of hindsight or in light of subsequent events. Yuska, supra; Iseah v. E.A. Conway Memorial Hospital, 591 So.2d 767 (La.App. 2d Cir.1991), writ denied, 595 So.2d 657 (La.1992). The mere fact that an injury occurred does not raise a presumption that the physician was negligent. LSA-R.S. 9:2794(C); Roberts, supra. Credibility determinations, including the evaluation of expert testimony, together with the ultimate issue of whether the plaintiff has satisfied her burden of proof, are factual issues to be resolved by the trier of fact and will not be disturbed on appeal in the absence of manifest error. Yuska, supra; Iseah, supra.
Dr. McNeely testified that in his training, he was taught that, in the field of periodontal surgery, wisdom teeth may need to be extracted. He was also taught that the periodontist may, if he feels qualified, extract wisdom teeth in the field of periodontal surgery rather than referring the patient to an oral surgeon. He also stated he believes that most of the periodontists practicing in the Shreveport area remove third molars in the field of surgery. Dr. McNeely said that removal of the third molar during the periodontal surgery facilitates the closure of the wounds around the distal portion of the second molar and minimizes the number of surgeries the patient has to experience. Dr. McNeely stated that Dr. Key did not fall below the standard of care in extracting this third molar because he was qualified through his training to perform the procedure. Dr. McNeely explained Mrs. Elkins' condition as resulting from post-operative excessive bleeding and swelling which caused compression and damaged both the lingual and the inferior alveolar nerves.
Dr. Borders testified that in his practice, if the patient has a third molar in the field of his periodontal surgery, and the tooth will compromise the results of his surgery, he would suggest that the tooth be removed. He also stated that it was his understanding that the periodontists in the Shreveport community do extract wisdom teeth. Dr. Borders said that the decision to remove wisdom teeth is a judgment call for each periodontist and that he has extracted teeth in positions similar to that of Mrs. Elkins. Like Dr. McNeely, Dr. Borders was of the opinion that Mrs. Elkins' condition was caused by post-operative bleeding and swelling. He explained the condition was more likely to have been caused by bleeding and swelling rather than Dr. Key's actually encountering both nerves and ending up with involvement of both nerves surgically.
Dr. Cush testified that third molars positioned similar to that of Mrs. Elkins always involve the inferior alveolar nerve. He also explained the procedure he would have used in removing Mrs. Elkins' third molar. Dr. Cush testified that the remaining root tip which broke off during Mrs. Elkins' surgery should not be removed because this could lead to more damage. Dr. Cush also stated that the distal pocket of the second molar, which is affected by the third molar, is one little area which can be kept clean without removal of the third molar; and, thus, he does not remove wisdom teeth that involve a nerve unless absolutely necessary. Although Dr. Cush testified how he would have handled Mrs. Elkins' treatment differently in some instances had she been his patient, he never stated that Dr. Key fell below the standard of care in his treatment of Mrs. Elkins.
Dr. Gardner testified that the problem he saw with Mrs. Elkins' third molar is its proximity *63 to the alveolar nerve canal and nerve bundle. He said that the tooth was in proximity to or overlapping the nerve canal, and since he would want the tooth out, he would have sent Mrs. Elkins to an oral surgeon. While Dr. Gardner prefers to have an oral surgeon remove impacted wisdom teeth, he explained that he is aware of periodontists in the Shreveport area, in addition to Dr. Key, who remove wisdom teeth on a more regular basis. Dr. Gardner also stated that Mrs. Elkins' third molar had significant dilaceration to the root tips which could have made the tooth more complicated to remove.
Based on the above evidence, we do not find that the trial court was manifestly erroneous in concluding that Dr. Key did not fall below the standard of care. Drs. McNeely and Borders both opined that Dr. Key did not fall below the standard of care. While Drs. Cush and Gardner explained the difficulties associated with a tooth similar to that of Mrs. Elkins, neither expressed the opinion that Dr. Key fell below the standard of care. In addition, all three periodontists testified that it was common practice for periodontists in the Shreveport area to remove third molars.

Res Ipsa Loquitur
Mrs. Elkins claims that the doctrine of res ipsa loquitur is applicable in the present case because "The testimony of all the experts... detailed the likely causes of damage to the lingual and inferior alveolar nerve. Most, if not all causes involved an element of carelessness, in omission or commission, by the medical operative or his or her staff of assistants." Dr. Key contends that the doctrine cannot apply in a case where the condition can occur even though the procedure is performed properly. He claims that there are possible causes for paresthesia other than malpractice and, therefore, the doctrine is inapplicable in this case. The trial judge, in his written ruling, concluded that the doctrine of res ipsa loquitur has no application to this case as residual paresthesia can result without malpractice.
Res ipsa loquitur is not a substantive legal tenet, but rather an evidentiary doctrine under which a tort claim may be proved by circumstantial evidence. Shahine v. Louisiana State University Medical Center in Shreveport, 28,691 (La.App.2d Cir. 9/27/96), 680 So.2d 1352. The following three elements must be presented for the doctrine of res ipsa loquitur to apply: (1) the defendant has actual control of the agency, instrumentality or conditions which caused plaintiff's injuries; (2) the evidence as to the true cause of plaintiff's loss is more readily accessible to defendant than plaintiff; and (3) the accident is of a kind that does not occur in the absence of negligence and/or the circumstances attending the accident create an inference of negligence on the part of defendant. (Emphasis supplied). Shahine, supra; Morgan v. Willis-Knighton Medical Center, 456 So.2d 650 (La.App. 2d Cir.1984); Langlinais v. Geophysical Service, Inc., 237 La. 585, 111 So.2d 781 (1959); Northwestern Mutual Fire Ass'n v. Allain, 226 La. 788, 77 So.2d 395 (1954); Dorman v. T. Smith & Son, 223 La. 29, 64 So.2d 833 (1953); Ray v. Ameri-Care Hospital, 400 So.2d 1127 (La.App. 1st Cir.1981), writ denied, 404 So.2d 277 (La.1981).
The defendant's negligence is inferred under the principle of res ipsa loquitur because, under the facts shown, the inference that defendant's negligence caused plaintiff's harm is probable and more plausible than any other explanation propounded. Shahine, supra. A plaintiff may not avail himself of the res ipsa loquitur doctrine, however, where the hypothesis that plaintiff's injuries were not caused by defendant's negligence is as equally plausible as the postulate that plaintiff's injuries were caused by defendant's negligence. Morgan, supra.
The first two elements of the above test are present in this case. Dr. Key had control of the instrumentalities and conditions of the extraction of Mrs. Elkins' third molar. In addition, the true cause of Mrs. Elkins' loss would be more readily accessible to Dr. Key, who actually performed the extraction, rather than Mrs. Elkins, who had been administered nerve block and other anesthetics and, thus, was not even aware of her condition until the effects of these drugs wore off.
The third element, however, is not present in this case. The evidence presented *64 shows both that paresthesia can occur in the absence of negligence and that the circumstances surrounding the accident do not create an inference of negligence on the part of Dr. Key. Drs. Borders and McNeely testified that Mrs. Elkins' condition was caused by post-operative swelling and bleeding. Dr. Cush also testified that paresthesia could be caused by factors other than negligence such as heat from an instrument used in removing bone or post-operative swelling. Dr. Gardner agreed that paresthesia could be caused by heat from instruments used in the extraction or the root tips hitting the nerve during removal. In addition, all four doctors testified to the effect that a periodontist can perform the procedure in accordance with the standard of care and still have a bad result.
We agree with the trial court that the doctrine of res ipsa loquitur is inapplicable in the present case.

CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court. The costs of this appeal are assessed to the plaintiff.
AFFIRMED.
NOTES
[1] LSA-R.S. 40:1299.53 provides in pertinent part:

A. In addition to such other persons as may be authorized and empowered, any one of the following persons in the following order of priority, if there is no person in a prior class who is reasonably available, willing, and competent to act, is authorized and empowered to consent, either orally or otherwise, to any surgical or medical treatment or procedures...:
(1) Any adult for himself.
* * * * * *
(4) The patient's spouse not judicially separated.